**In re Jose B. SALGADO.**

No. 08–01–00194–CV.

Court of Appeals of Texas, El Paso.

Aug. 2, 2001.

John Needham, El Paso, for Relator.

Steve Spurgin, Marfa, for Respondent.

Before Panel No. 1 LARSEN, McCLURE, and CHEW, JJ.

## OPINION

McCLURE, Justice.

In this original mandamus proceeding, Relator Jose B. Salgado challenges the issuance of a protective order and the de-

nial of a motion to transfer venue by the Honorable Kenneth Dehart, Judge of the 394th District Court of Presidio County, Texas. We deny relief.

## FACTUAL AND PROCEDURAL HISTORY

■ Salgado has not provided us with a reporter's record from any of the proceedings occurring in the court below. Therefore, the facts are taken from the sworn pleadings and attached exhibits. In 1990, Salgado obtained a divorce from his wife, Ana Salgado.[1] In the final decree of divorce, Salgado was appointed as the managing conservator of the couple's then four-year-old daughter, Elizabeth. It is undisputed that Elizabeth lived with Salgado until August 1998. At that point and with Salgado's written consent,[2] Elizabeth began residing in Marfa, Texas, with her paternal grandmother, Aurora Salgado. Salgado's sister, Mary M. Nunez, also resides with Mrs. Salgado. During the summer of 2000, Elizabeth returned to El Paso and lived with Salgado until an unspecified date in November. She then ran away from Salgado's home and went to a shelter in El Paso. Upon her allegation that Salgado had physically abused her while she lived with him during the prior months, Child Protective Services (CPS) initiated an investigation. In late November or early December, Mrs. Salgado and Nunez picked up Elizabeth in El Paso and returned her to Marfa.[3] When the CPS

1. Because the divorce decree was rendered by the County Court at Law No. 5 of El Paso County, Texas, it is the court of continuing jurisdiction. See TEX.FAM.CODE ANN. §§ 155.001–155.002 (Vernon Supp.2001). Our references to the county court at law are to the County Court at Law No. 5 of El Paso County unless specifically noted otherwise.

2. On August 3, 1998, Salgado executed a sworn document which stated that Elizabeth would live with his mother, Aurora B. Salgado, in Marfa, Texas. Salgado gave full "tem-

porary guardianship" of Elizabeth to Mrs. Salgado which included the authority to act as her care giver and was clearly intended to allow Mrs. Salgado the ability to enroll Elizabeth in school and to obtain medical treatment for her.

3. In his unsworn motion for new trial, Salgado claimed that after consulting with the CPS investigator, he agreed for Elizabeth to live with his mother until the conclusion of the CPS investigation.

investigation concluded in early January 2001, Salgado asked that Elizabeth be returned to El Paso. This request was refused.

On January 11, 2001, Nunez filed an application for protective order on behalf of Elizabeth in the 394th District Court of Presidio County. The application alleged that Elizabeth had been physically abused by Salgado while she lived with him in the summer and fall of 2000. The application also recited that Elizabeth resided in Marfa with Nunez and attended school there. The application sought, among other things, that Nunez be granted exclusive possession of the child. Acknowledging that the child may be subject to the continuing jurisdiction of another court, Judge Dehart issued a temporary ex parte order on January 11, 2001, prohibiting Salgado from:

- committing family violence;
- removing the child from Nunez's possession or from the jurisdiction of the court;
- going near the residence or school for any purpose likely to harass, annoy, alarm, abuse, torment, or embarrass the child;
- communicating directly with the child or communicating a threat through any person to Elizabeth or Nunez; and
- possessing a firearm or ammunition.

The order granted exclusive possession of Elizabeth to Nunez and set a hearing for January 24, 2001. On the day of the hearing, Salgado filed an answer to the application, a plea to the jurisdiction, and a motion to transfer venue. Pointing out that the temporary ex parte order had granted exclusive possession of the child to Nunez in contravention of the existing custody orders, he contended that County Court at Law No. 5 has continuing exclusive jurisdiction of Elizabeth and El Paso County is the proper venue for a suit affecting the parent-child relationship.

At the conclusion of the January 24 hearing, Judge Dehart found that family violence had occurred and was likely to occur in the future. Consequently, he orally granted the protective order, limited the duration of the protective order to June 1, 2001, and specifically advised the parties that they would be required to resolve these issues before the court of continuing jurisdiction. On January 26, 2001, the Texas Department of Protective and Regulatory Services (DPRS) finalized its investigation of the allegations against Salgado, finding that he did not "have a role in the alleged abuse or neglect." Salgado then filed a motion to reconsider on February 13, 2001, reasserting his claim that the protective order was void because the County Court at Law No. 5 is the court of continuing jurisdiction. He attached a copy of the letter from DPRS absolving him of any abuse or neglect. Unpersuaded by Salgado's arguments, the trial court signed the written protective order on February 22, 2001 without expressly ruling on Salgado's motion to reconsider. The written order prohibited Salgado from committing family violence or removing Elizabeth from Presidio County without a court order. The order also granted Salgado visitation on the first and third weekend of each month but precluded overnight visitation.

Salgado filed this petition for mandamus relief on May 4, 2001. Less than two weeks later, on May 16, 2001, Nunez filed a motion to modify the decree of divorce in the county court at law, seeking to be named the sole managing conservator of Elizabeth. She alleged that Salgado had voluntarily relinquished actual care, control, and possession of the child for a period of not less than six months. In an effort to support that claim, Nunez attached the August 1998 document in which

Salgado granted temporary guardianship of the child to Aurora Salgado, but she did not include any document demonstrating that Salgado had relinquished custody of Elizabeth to Nunez. On the same date, May 15, the county court at law entered temporary ex parte orders which effectively continued Nunez's custody of Elizabeth by prohibiting Salgado from removing Elizabeth from her possession. The court set the matter for hearing on June 27, 2001.

## MOOTNESS

■ Nunez claims that the issues raised in this original proceeding are moot since the protective order will have expired on June 1, 2001, prior to the issuance of this opinion. Although it is not specifically asserted by Nunez, the filing of the motion to modify in the court of continuing jurisdiction also raises a question of mootness. Neither the Texas Constitution nor our State Legislature has vested this Court with the authority to render advisory opinions. *See* TEX. CONST. art. II, § 1; *Speer v. Presbyterian Children's Home and Service Agency,* 847 S.W.2d 227, 229 (Tex. 1993); *Olson v. Commission for Lawyer Discipline,* 901 S.W.2d 520, 522 (Tex. App.—El Paso 1995, no writ). The mootness doctrine limits courts to deciding cases in which an actual controversy exists. *Federal Deposit Insurance Corporation v. Nueces County,* 886 S.W.2d 766, 767 (Tex.1994); *Olson,* 901 S.W.2d at 522. When there has ceased to be a controversy between the litigating parties due to events occurring after judgment has been rendered by the trial court, the decision of an appellate court would be a mere academic exercise and the court may not decide the appeal. *Olson,* 901 S.W.2d at 522. Stated another way, if a judgment cannot have a practical effect on an existing controversy, the case is moot. *Olson,* 901 S.W.2d at 522. Two exceptions to the mootness doctrine currently exist: (1) the

"capable of repetition" exception and (2) the "collateral consequences" exception. *Olson,* 901 S.W.2d at 522, *citing General Land Office v. OXY U.S.A., Inc.,* 789 S.W.2d 569, 571 (Tex.1990).

■ The "capable of repetition yet evading review" exception is applied where the challenged act is of such short duration that the appellant cannot obtain review before the issue becomes moot. *OXY U.S.A.,* 789 S.W.2d at 571. The "collateral consequences" exception has been applied when Texas courts have recognized that prejudicial events have occurred "whose effects continued to stigmatize helpless or hated individuals long after the unconstitutional judgment had ceased to operate." *Id.* In the latter case, the effects are not absolved by mere dismissal of the cause as moot. *Id.*

■ Ordinarily, the expiration of an order granting injunctive or protective relief would render the issue moot. *See Guajardo v. Alamo Lumber Company,* 159 Tex. 225, 317 S.W.2d 725, 726 (1958)(granting of a temporary injunction to restrain a sale rendered moot); *Speed v. Keys,* 130 Tex. 276, 109 S.W.2d 967, 967 (1937)(temporary restraining order which expired by its own express terms rendered moot); *Hermann Hospital v. Tran,* 730 S.W.2d 56, 57 (Tex. App.—Houston [14th Dist.] 1987, no writ)(temporary restraining order which expired by its own terms rendered moot). Here, however, the issuance of the protective order carries a significant collateral consequence in that Nunez, having been granted care and possession of Elizabeth until June 1 by virtue of the order, has utilized the period of custody to argue that she has standing to file a suit affecting the parent-child relationship. *See* TEX.FAM. CODE ANN. § 102.003(a)(9)(Vernon Supp. 2001)("An original suit may be filed at any time by ... a person, who has had actual care, control, and possession of the child for at least six months ending not more

than 90 days preceding the date of the filing of the petition."). If we determine that Judge Dehart's order is void and vacate it, a question exists whether Nunez has standing to maintain her motion to modify in suit affecting the parent-child relationship.[4] Given this serious collateral consequence, we find that the issue before us is not moot.

## STANDARD OF REVIEW

 Mandamus is an extraordinary remedy available only in the most limited of circumstances. See Canadian Helicopters, Ltd. v. Wittig, 876 S.W.2d 304, 305 (Tex.1994); Walker v. Packer, 827 S.W.2d 833, 840 (Tex.1992). A court should issue mandamus only to correct a clear abuse of discretion or the violation of a legal duty when there is no other adequate remedy at law. See Canadian Helicopters, 876 S.W.2d at 305; Johnson v. Fourth Court of Appeals, 700 S.W.2d 916, 917 (Tex.1985). A court abuses its discretion when it fails to properly apply the law to the undisputed facts, when it acts arbitrarily or unreasonably, or when its ruling is based on factual assertions unsupported by the record. See In re Kramer, 9 S.W.3d 449, 450 (Tex.App.—San Antonio 1999, orig. proceeding). The relator bears the heavy burden of showing an abuse of discretion as well as the inadequacy of an appellate remedy. See Canadian Helicopters, 876 S.W.2d at 305; Lutheran Soc. Serv., Inc. v. Meyers, 460 S.W.2d 887, 889 (Tex.1970).

## ADEQUATE REMEDY AT LAW

 The first step in our analysis is to determine whether mandamus relief is

4. Under Section 156.002, a person having standing to bring an original suit affecting the parent-child relationship under Chapter 102 of the Family Code has standing to bring a modification action. TEX.FAM.CODE ANN. § 156.002(b)(Vernon 1996). Section 102.003 provides that a suit may be brought by a person, other than a foster parent, who has had actual care, control, and possession of the child for at least six months ending not more than ninety days before suit is filed. TEX.FAM. CODE ANN. § 102.003(a)(9). Subsection (b) provides that in computing the time necessary for standing under subsection (a)(9), the court may not require that the time be continuous and uninterrupted but shall consider the child's principal residence during the relevant time frame. TEX.FAM.CODE ANN. § 102.003(b). Aurora Salgado had actual care, control, and possession of Elizabeth with Salgado's consent from August 1998 through the summer of 2000 and again from November 2000 until January 2001. Salgado revoked his consent at that time. The protective order was signed on February 22, 2001 and expired on June 1, 2001. The temporary orders were issued by the court of continuing jurisdiction on May 15, 2001 and to our knowledge, continue in effect. The relevant time frame for determining standing would be the six month period predating the filing of the motion to modify, i.e., November 15, 2000 through May 15, 2001. Because a party who retains possession of a child against the wishes of the parent/managing conservator may not utilize the time during which the child is withheld for purposes of determining a statutory period of relinquishment, the validity of the protective order is critical. See In re De La Pena, 999 S.W.2d 521, 527 (Tex.App.—El Paso 1999, no pet.). If the order is invalid, Nunez's actual possession of the child arguably did not begin until entry of the temporary orders by the court of continuing jurisdiction on May 15. Even if the protective order is valid, Nunez must still establish that she had possession from November 15, 2000 until February 22, 2001. That determination will require a finding by an appropriate trier of fact as to whether Salgado relinquished Elizabeth to Nunez rather than Mrs. Salgado during the CPS investigation such that Nunez has standing under subsection (a)(9). This is particularly true since standing by virtue of residing with the child's guardian (language Nunez incorporated in her motion to modify) requires that the guardian be deceased at the time of the filing of the suit. TEX FAM.CODE ANN. § 102.003(a)(11) (commonly referred to as the stepparent statute). We express no opinion on these issues as they are not properly before us. We detail the analysis simply to demonstrate the significant consequences of the protective order at issue.

precluded due to the availability of an adequate remedy at law, namely, direct appeal. Appellate courts generally have jurisdiction over final judgments and such interlocutory orders as the legislature deems appealable. TEX.CIV.PRAC. & REM. CODE ANN. § 51.012 (Vernon 1997) and § 51.014 (Vernon Supp.2001); *Ruiz v. Ruiz*, 946 S.W.2d 123, 124 (Tex.App.—El Paso 1997, no writ). In this case, we are concerned with two distinct, yet interrelated orders—the denial of the motion to transfer and the protective order.

■■■■ With respect to denial of the motion to transfer, appellate courts will not generally issue writs of mandamus to correct erroneous venue decisions, but they may do so in suits affecting the parent-child relationship, particularly where transfer is mandatory under the Family Code. *Kramer*, 9 S.W.3d at 450, *citing Bollard v. Berchelmann*, 921 S.W.2d 861, 864 (Tex.App.—San Antonio 1996, no writ) and *Proffer v. Yates*, 734 S.W.2d 671, 673 (Tex.1987).

The Family Code does not currently provide for appeal of Chapter 81 protective orders[5] and there is a split among intermediate appellate courts regarding their appealability. *See Ruiz*, 946 S.W.2d at 124 n. 1 (noting no provision for appeal of protective orders issued under former Chapter 71). The Waco Court of Appeals has held that a protective order is an unappealable interlocutory order given the trial court's continuing discretion to modify it.[6] *See Normand v. Fox*, 940 S.W.2d 401, 404 (Tex.App.—Waco 1997, no writ)(con-

trasting authority to modify protective order with continuing jurisdiction to modify an order that provides for the conservatorship, support, or possession of and access to a child; pursuant to Section 156.004, a suit for modification is a new lawsuit filed after the rendition of a final order, but there is no similar provision found in Chapter 81). On the other side of the issue, the San Antonio Court of Appeals has held that a protective order is an appealable final judgment because it is, in essence, a permanent injunction. *James v. Hubbard*, 985 S.W.2d 516, 518 (Tex.App.—San Antonio 1998, no pet.), *citing Aloe Vera of America, Inc. v. CIC Cosmetics International Corp.*, 517 S.W.2d 433, 435 (Tex.Civ.App.—Dallas 1974, no writ). Some courts have followed *James* and exercised jurisdiction over appeals from protective orders. *See e.g., Striedel v. Striedel*, 15 S.W.3d 163, 164 (Tex.App.—Corpus Christi 2000, no pet.); *In re Cummings*, 13 S.W.3d 472, 474–75 (Tex.App.—Corpus Christi 2000, no pet.); *Winsett v. Edgar*, 22 S.W.3d 509, 510 (Tex.App.—Fort Worth 1999, no pet.). Recently, however, the Supreme Court criticized the reasoning in *James* and the *Aloe* case on which it heavily relied. *Qwest Communications Corporation v. AT&T Corporation*, 24 S.W.3d 334, 337 (Tex.2000)(stating that the approach in these cases is problematic in that a burdensome interlocutory order that has the same effect as a temporary injunction could be shielded from appellate review by the very defect that makes it erroneous; whether an injunction is effective for a

5. House Bill 1741, proposed during the 2001 legislative session, would have provided for a right of appeal from protective orders, except temporary ex parte orders, entered under Title 4, Subtitle B of the Family Code. The bill was left pending in the Juvenile Justice and Family Issues Committee.

6. Former Section 71.14(a) provided: On the motion of any party, the court, after notice to

the other parties and a hearing, may modify a prior order to exclude any item included in the prior order or to include any item that could have been included in the prior order. Acts 1979, 66th Leg., R.S., ch. 98, § 11, 1979 TEX.GEN.LAWS 185, 188, *amended by* Acts 1995, 74th Leg., R.S., ch. 1024, § 14, 1995 TEX.GEN. LAWS 5101 (current version found at TEX.FAM. CODE ANN. § 87.001).

fixed period of time or is made effective only until further order of the court or final judgment is only one of the factors in determining the character and nature of the order). Here, however, Relator does not complain of the finding of family violence; he complains that the trial court lacked jurisdiction to even consider the application. We conclude that mandamus review is available.

## ISSUES FOR REVIEW

Salgado offers several arguments in support of his claim for mandamus relief. He argues that the protective order is void, or alternatively, that Judge Dehart clearly abused his discretion in issuing the protective order, because:

- the court lacked subject matter jurisdiction since an application for protective order must be filed in the court of continuing, exclusive jurisdiction;
- it conflicts with a valid order of the county court at law;
- venue is improper in Presidio County;[7] and
- the application should have been transferred to the court of continuing jurisdiction.

These complaints fall neatly into two categories; the first is jurisdictional, the second relates to venue.

## GENERAL STATUTES PERTAINING TO PROTECTIVE ORDERS

Title 4 of the Family Code was first enacted in 1979 and governs protective orders. A court[8] shall issue a protective order if the court finds that family violence has occurred and is likely to occur in the

future. *See* TEX.FAM.CODE ANN. § 81.001. A protective order proceeding is initiated by filing "An Application for a Protective Order" with the clerk of the court. TEX. FAM.CODE ANN. § 82.001. An application may be filed by any adult for the protection of a child. TEX.FAM.CODE ANN. § 82.002(a)(2). Regarding venue, an application may be filed in the county in which the applicant resides, or the county in which the respondent resides. TEX.FAM. CODE ANN. § 82.003.

### *Subject Matter Jurisdiction*

■■■■■ Salgado first argues that the 394th District Court lacked subject matter jurisdiction because another court has continuing, exclusive jurisdiction of Elizabeth. The absence of subject-matter jurisdiction may be raised by a plea to the jurisdiction. *Texas Department of Transportation v. Jones,* 8 S.W.3d 636, 637 (Tex.1999). Our task is to examine the pleadings, to take as true the facts pled, and to determine whether those facts support jurisdiction in the trial court. *Texas Association of Business v. Texas Air Control Board,* 852 S.W.2d 440, 446 (Tex.1993). We construe the pleadings in favor of the pleader. *Id.* If necessary, we may review the entire record to determine if there is jurisdiction. *Id.*

■■■ Contrary to Salgado's position, Title 4 plainly contemplates that an application for a protective order may be filed on behalf of a child who is subject to the continuing jurisdiction of a court under Title 5. In such a case, the application must include a copy of each court order

---

7. Salgado also argues that the application for a protective order is, in actuality, a suit affecting the parent-child relationship under Title 2. If Salgado is correct, then the appropriate remedy would have been an appeal from the resulting order rather than mandamus. Therefore, this argument does not entitle him to mandamus relief.

8. "Court" means the district court, court of domestic relations, juvenile court having the jurisdiction of a district court, statutory county court, constitutional county court, or other court expressly given jurisdiction under this title. TEX.FAM.CODE ANN. § 71.002.

affecting the conservatorship, support, and possession of or access to the child, or a statement that the orders affecting the child are unavailable to the applicant and that a copy of the orders will be filed with the court before the hearing on the application. TEX.FAM.CODE ANN. § 82.007. As further evidence that a court other than the court of continuing jurisdiction may issue a protective order, Section 83.005 provides that a temporary ex parte order prevails over any other court order issued under Title 5 to the extent of any conflict between the orders. TEX.FAM.CODE ANN. § 83.005. Further, a protective order which affects a party's right to possession of or access to a child may be transferred to the court of continuing, exclusive jurisdiction if the court finds that the transfer is in the interest of justice or for the safety or convenience of a party or a witness. TEX.FAM.CODE ANN. § 85.064 (Vernon Supp. 2001). Consequently, we must reject Salgado's argument that only the court of continuing, exclusive jurisdiction is authorized to issue a protective order.

### Conflict Between Protective Order and Existing Custody Order

■■■■■ Salgado also contends that the protective order is void because it conflicts with a valid custody order of the court of continuing, exclusive jurisdiction. In a protective order, the court may prohibit a party from removing a child from the pos-

session of a person named in the order or from removing a child from the jurisdiction of the court. TEX.FAM.CODE ANN. § 85.021. Section 83.005 expressly provides that a temporary ex parte order—issued without notice or hearing—prevails to the extent of any conflict with an order issued under Title 5. TEX.FAM.CODE ANN. § 83.005. Title 4 does not currently contain a similar provision to resolve conflicts between protective orders—issued after notice and hearing—and other existing orders.[9] If, however, a protective order affects a party's right of possession of or access to a child, the court may transfer the protective order to the court of continuing, exclusive jurisdiction if the court finds that the transfer is in the interest of justice or for the safety or convenience of a party or witness. *See* TEX.FAM.CODE ANN. § 85.064(b), (c). The transfer may be made on the court's own motion or on the motion of a party. *Id.* Given these provisions, the Legislature obviously anticipated that a protective order may conflict with a valid pre-existing custody order. Indeed, this is not the only legislative blessing of conflicting orders in the realm of family violence. The Code of Criminal Procedure authorizes a magistrate, upon a defendant's appearance after arrest for an offense involving family violence, to issue a protective order which supersedes any other orders for the conservatorship or possession of a child for the duration of

---

9. Former Section 71.15(f) provided that a temporary ex parte protective order prevailed over an order issued by the court of continuing jurisdiction except that upon a motion to vacate, the court must vacate the conflicting temporary ex parte orders. That provision was in harmony with former Section 71.11(e) which provided that any order of a court of continuing jurisdiction prevailed over any conflicting final protective order. The 1995 amendments to the Family Code did not alter the ex parte protective order language but deleted former Section 71.11(e) and added new language to Section 71.06(c) such that a protective order was valid and enforceable until it was superceded by another court with jurisdiction. *See* Gail Parr, *1995 Amendments to Texas Family Code Title 4*, STATE BAR SECTION REPORT FAMILY LAW, Volume 1995-3, p. 16-17. In 1997, Title 4 was amended again to provide that during the time the order is valid, a temporary ex parte protective order prevailed over any other court order issued under Title 5 to the extent of any conflict between the two. *See* TEX.FAM.CODE ANN. § 83.005; Gail Parr and Christina Schneider, *Amendments to Texas Family Code Title 4*, STATE BAR SECTION REPORT FAMILY LAW, Volume 1997-3, p. 12.

the magistrate's order. TEX.CODE CRIM. PROC.ANN. art. 17.292(f)(Vernon Supp. 2001).[10] The public policy surrounding all of these provisions is to allow immediate access to a tribunal for the safety and protection of a child. While it does not appear that all of the legislative glitches have been resolved satisfactorily, we decline the invitation of both Salgado and Nunez to impose our own solution by legislating from the bench.

### Venue

██ Salgado next contends that venue is improper in Presidio County for two reasons, first because Elizabeth resided in El Paso County at the time the family violence occurred,[11] and second because she had only resided in Presidio County for six or seven weeks at the time the application was filed.

██ Section 82.003 provides only that an application may be filed in the county in which the applicant resides, or the county in which the respondent resides. TEX.FAM.

CODE ANN. § 82.003. It makes no provision for filing the application in the county where the acts occurred. Salgado is a resident of El Paso County. Consequently, venue in Presidio County must be predicated on the applicant's residence. In the application for protective order, Nunez incorrectly labeled herself as the "applicant." While the application may be filed by an adult on behalf of a child, the protective order is issued to protect "the applicant," who in this case is the child alleged to be the victim of family violence. Therefore, the question is whether the record demonstrates that Elizabeth was a resident of Presidio County at the time Nunez filed the application on her behalf.

Ordinarily, a child resides where the parent who has been appointed managing conservator resides, which in this case is El Paso County. *See* TEX.FAM.CODE ANN. § 103.001 (venue provisions for original suit under Title 2). Section 103.001(c)(5) provides that if the person whose residence would otherwise determine venue

---

**10.** House Bill 601, proposed during the 2001 legislative session, would have amended subsection art. 17.292(f) by adding the following sentence:

To the extent that a condition imposed by an order issued under this article conflicts with a condition imposed by a protective order subsequently issued under the Family Code, the condition imposed under the Family Code prevails.

The bill additionally added new subsection (n):

On motion, notice, and hearing or on agreement of the parties, an order for emergency protection entered under this article may be transferred to any court with continuing jurisdiction over matters involving a child of the parties or a family law suit involving the parties.

The bill was left pending in the Juvenile Justice and Family Issues Committee. While the Legislature has failed to fully resolve the conflicts issue, it clearly is aware of the problem.

**11.** We recognize that CPS absolved Salgado of any abuse or neglect. However, Salgado has not complained of the trial court's finding that family violence had occurred and was likely to occur in the future. Title 4 requires that at the close of a hearing on an application for protective order, a trial court shall find whether family violence has occurred and whether it is likely to occur in the future. TEX.FAM.CODE ANN. § 85.001(a). Unchallenged findings of the trial court are binding upon us. *S & A Restaurant Corp. v. Leal,* 883 S.W.2d 221, 225 (Tex.App.—San Antonio 1994), *rev'd on other grounds,* 892 S.W.2d 855 (Tex.1995)(*per curiam*); *Wade v. Anderson,* 602 S.W.2d 347, 349 (Tex.Civ.App.—Beaumont 1980, writ ref'd n.r.e.). *See* 6 MC-DONALD, TEXAS CIVIL APPELLATE PRACTICE § 18:12 n. 120 (1992). While these cases involve an analysis of traditional findings of fact under TEX.R.CIV.P. 296, statutory findings mandated by the Family Code have been subjected to a similar analysis. *See Gray v. Gray,* 971 S.W.2d 212, 216–17 (Tex.App.—Beaumont 1998, no pet.), *citing Martinez v. Molinar,* 953 S.W.2d 399, 400 (Tex.App.—El Paso 1997, no writ).

has left the child in the care and control of an adult, the child resides where the adult resides. Since Salgado permitted Elizabeth to live with his mother pending resolution of the CPS investigation, an argument could be made that Presidio County is her residence under this provision. On the other hand, Salgado revoked his consent prior to the time the application for protective order was filed; he demanded Elizabeth's return, albeit unsuccessfully. Still further, nothing in the record indicates that Salgado relinquished possession to Nunez, although Nunez resided in the same home with the grandmother.

 Chapter 81 does not define residency of a child applicant for purposes of establishing venue under Section 82.003. In determining the elements of residence, we look for guidance to cases construing residency in various contexts. *See In re S.D.*, 980 S.W.2d 758, 760 (Tex.App.—San Antonio 1998, pet. denied). The Supreme Court has articulated the elements of residency under the general civil venue statute: (1) a fixed place of abode within the possession of the party; (2) occupied or intended to be occupied consistently over a substantial period of time; (3) which is permanent rather than temporary. *Snyder v. Pitts*, 150 Tex. 407, 241 S.W.2d 136, 140 (1951). An element of permanency is necessary before a party can be considered a resident of a particular county. *In re S.D.*, 980 S.W.2d at 760–61. For example, in a modification case, "permanency may be shown either by presence in the county for an extended period of time or by some agreement, explicit or implied, by the party with a right to control the child's residence, for the child to stay in the new county for an extended period of time." *In re S.D.*, 980 S.W.2d at 761, *quoting Martinez v. Flores*, 820 S.W.2d 937, 940 (Tex.App.—Corpus Christi 1991, no writ). This permanency requirement is contained with Section 155.203 which governs how a

child's residence is established for purposes of Title 5:

> In computing the time during which the child has resided in a county, the court may not require that the period of residence be continuous and uninterrupted but shall look to the child's principal residence during the six-month period preceding the commencement of the suit.

TEX.FAM.CODE ANN. § 155.203 (Vernon 1996). This provision relates to the transfer of continuing, exclusive jurisdiction under Title 5 and is premised on the concept found in Section 155.201 that transfer is mandatory once the child has resided in another county for six months or longer. TEX.FAM.CODE ANN. § 155.201(b). While Title 4 contains no provision regarding the length of time necessary to establish residency for purposes of a protective order, it does provide that the transfer of any protective order to the court of continuing exclusive jurisdiction shall be conducted according to the procedures provided in Section 155.207. TEX.FAM.CODE ANN. § 85.064(d). While the purely permissive transfer is troublesome for reasons we detail below, we cannot address the merits of Salgado's complaint in this regard. Because he did not allege in the trial court that Elizabeth was not a resident of Presidio County, he has waived review. Consequently, we are unable to conclude that Judge Dehart clearly abused his discretion or violated a legal duty by finding that venue is proper in Presidio County.

### Transfer of the Protective Order

Finally, Salgado contends that Judge Dehart clearly abused his discretion by denying his motion to transfer to the court of continuing jurisdiction in El Paso County. In both the trial court and in this mandamus proceeding, Salgado has taken the position that the case should have been transferred prior to any hearing on the

protective order due to a lack of jurisdiction and improper venue. We have rejected those arguments. While Sections 85.064(b) and (c) provide for a permissive transfer of a protective order to the court of continuing jurisdiction under certain circumstances, the record does not reflect that Salgado filed a motion to transfer the protective order pursuant to this provision. *See* Tex.Fam.Code Ann. § 85.064(b) and (c). Even if Salgado had requested a transfer pursuant to the statute, he has not provided us with the reporter's record from any hearing so that a determination could be made whether the trial court abused its discretion in failing to find the transfer is required in the interest of justice or for the safety or convenience of a party or witness.

Relying upon Tex.R.Civ.P. 87, Salgado assigns error to the trial court's failure to conduct a separate hearing on his motion to transfer venue. Because we have not been provided with a reporter's record of any of the proceedings, we cannot ascertain whether a separate hearing was even requested, much less that the request was denied. Further, we question whether Rule 87 applies to a motion to transfer venue in this context. *See Martinez v. Flores*, 820 S.W.2d 937, 938 (Tex.App.—Corpus Christi 1991, orig. proceeding)(holding that the transfer procedures in the Family Code governing suits affecting the parent-child relationship are the exclusive mechanism for transferring the case or challenging venue and were designed to supplant the regular rules dealing with transfer of venue applicable in ordinary civil cases). We recognize that Rules 86 and 87 were applied in *Magill v. Sheffield*, 612 S.W.2d 677 (Tex.Civ.App.—Dallas 1981, no writ). The statute in effect at that time, however, did not provide for a transfer of a protective order to a court of continuing jurisdiction. Indeed, the court commented:

It might be advisable to insert in title 4 a provision authorizing the court to transfer the proceeding to the court of continuing jurisdiction, rather than to consider the respondent's plea of privilege, but we find no authority for such a transfer in the Code as it stands. Any argument, in this respect, therefore, must be addressed to the legislature rather than to the courts.

*Magill*, 612 S.W.2d at 681. The Legislature did just that in 1997 when it added Subchapter D to Title 4, Chapter 85. *See* Tex.Fam.Code Ann. § 85.064, added by Acts 1997, 75th Leg., ch. 1193, § 16, eff. Sept. 1, 1997. For all of these reasons, Salgado has failed to establish that Respondent clearly abused his discretion or violated a legal duty.

## CONSEQUENCES OF STATUTORY CONSTRUCT

We understand the concerns expressed by Salgado that a mechanical application of Title 4 can sanction rampant forum shopping. A protective order is effective for the period stated in the order, not to exceed two years, or if a period is not stated in the order, until the second anniversary of its issuance. Tex.Fam.Code Ann. § 85.025(a). We have already outlined the standing consequences. There are also jurisdictional ramifications. Consider the following hypothetical. Suppose that the parents of a child are divorced in El Paso County such that an El Paso County court becomes the court of continuing, exclusive jurisdiction. The father is appointed the sole managing conservator of the parties' daughter. A year after the divorce, the mother moves to Brewster County. During summer visitation, the mother files an application for protective order, alleging that the child has been sexually assaulted by the father. Following a hearing, the mother is awarded temporary possession of the child and the father is awarded only

supervised visitation. By its terms, the order is effective for one year, during which time the father is to undergo counseling. As this Court has not directly addressed the question whether a protective order is appealable, the order may or may not be subject to review. The Brewster County court declines to transfer the case back to El Paso County. Six months later, the mother files a motion to modify in the court of continuing jurisdiction, coupled with a motion to transfer alleging that the daughter has now resided in Brewster County for six months. Certainly one could argue that the transfer would be mandatory. If so, the husband has had no appellate review of an order removing the child from his possession and as a result he must now litigate the modification on his ex-wife's home turf. Here, however, Judge Dehart wisely crafted his order so that it would expire before six months had elapsed, and he further instructed the parties that additional litigation should be pursued in the court of continuing jurisdiction. And that is exactly what Nunez has done.

Because we have determined that jurisdiction and venue were proper in Presidio County, and because Salgado has not brought forward a record by which we can determine whether Judge Dehart abused his discretion by failing to immediately transfer the matter to the court of continuing jurisdiction, we deny mandamus relief.