NUMBER 13-04-063-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 
 

IRA RUSSELL CLEMENTS, JR., Appellant,


v.
 


LINDA HASKOVEC, Appellee.

 




On appeal from the County Court of Matagorda County, Texas.


 




O P I N I O N



Before Chief Justice Valdez and Justices Yañez and Benavides


Opinion by Justice Benavides



 In this case, we review the factual and legal sufficiency of the evidence supporting
a now-expired family violence protective order. Although an expired order is ordinarily
moot, this appeal is live under the "collateral consequences" exception to the mootness
doctrine. See In re Cummings, 13 S.W.3d 472, 475 (Tex. App.-Corpus Christi 2000, no
pet.). We conclude that the evidence before the county court was legally and factually
sufficient to support the protective order. Therefore, we affirm the judgment.

I. Background

 The subject of the protective order in this case is the appellant, Ira Russell
Clements, Jr. In 2003, Ira lived in Bay City, Texas with his elderly wife, Helen Pearl
Clements, who had been diagnosed with Alzheimer's disease. Ira and Helen had two
daughters, Linda Haskovec and Clela Pausewang, who lived nearby.

 In March 2003, at the Clements home, Ira and his daughter Linda had an argument
about Helen's care and well-being; Linda believed that her father was behaving abusively
towards her mother. Linda attempted to remove her mother from the home, but Ira
prevented Linda from doing so and forced her to leave the house. Ira angrily warned Linda
not to come back to the Clements house again. After the incident, however, Ira telephoned
Linda on multiple occasions and requested that she come back to the house. On those
occasions, Ira wanted Linda to return to pacify Helen and to take her to Linda's home when
she had become either ill or upset.

 On November 26, 2003, Linda was caring for her mother at Linda's home while
making Thanksgiving dinner preparations. Helen stated that she did not want to leave
Linda's home because she feared returning to Ira. Linda also observed a bruise on her
mother's arm, which appeared to be the result of a strike from someone's hand because
the outline of a thumb and forefingers was visible on the bruise. Linda kept her mother at
her home that evening.

 The following day, November 27, 2003, Linda and her husband, Michael Haskovec,
went to the Clements home with Helen to pick up some of Helen's personal items and to
announce that Linda would be taking her mother away. Although Ira had once warned
Linda to stay away from the home, she did not believe that her presence could be
considered trespassing because Ira had called her back to the home on multiple occasions
after the warning. Additionally, Linda presumed that she had her mother's consent to
come to the house.

 When Linda told her father why she had come to the Clements home, he became
belligerent. He shouted at Linda, grabbed her hair, and drew his fist back as though
threatening to hit her. Linda also claims that her mother attempted to sneak out of the
house three times, but each time, Ira grabbed Helen's arm and pulled her back inside the
home. Ira does not deny any of the accusations; he instead characterizes his behavior as
justified to ward off a trespasser.

 A sheriff's deputy, Dennis Bensfield, came to the Clements home to arrest Ira on
December 2, 2003 in response to a sworn complaint Linda filed with the Precinct 6 Justice
of the Peace. Upon arriving, the sheriff's deputy noticed Helen at the door, nervous and
shaking. Helen told him that she feared for her life because Ira said that he would kill her. 
Ira was arrested and jailed for alleged assault.

 Later that same day, the Precinct 6 Justice of the Peace issued an emergency
protective order against Ira. The application for the order, signed by Linda, stated that Ira
had committed "family violence . . . involving serious bodily injury AND/OR an act in
furtherance of stalking . . . ." The court issued the protective order, and Ira appealed to
Matagorda County Court.

 Also on that day, the Matagorda County Attorney filed an application for a protective
order against Ira on behalf of Helen, Linda, and her husband, Michael, in Matagorda
County Court. When the county court held a hearing on January 22 on the Matagorda
County application, Linda moved to non-suit the previous emergency protective order and
the court granted the motion.

 Considering only the new application filed by the county attorney, the court heard
testimony from two members of the sheriff's department and both of Ira's daughters. 
Officer Robert Miles testified that when he came to investigate the November 27th
disturbance, Ira admitted to grabbing Linda's hair and stated that he "should have beat the
hell out of [Linda]." Officer Bensfield testified about Helen's comment that she feared for
her life and her nervous and shaken demeanor when he came to the Clements residence
to arrest Ira on Dec. 2nd.

 Ira's daughters testified that during their childhood, Ira had been non-violent and
peaceful, but over the past eight to ten months, his behavior had become increasingly
violent. Linda testified in specific terms about the physical confrontation she had with Ira
on November 27, when she attempted to remove her mother from Ira's care. She also
testified about recent verbal and physical altercations between Ira and his housekeeper
and her mother's caretaker. Both daughters expressed specific concerns for their mother's
safety. Clela, for example, testified that on one occasion, when her mother was away from
Ira, her mother said that "she was scared and didn't want to go home" and that Ira
"dragged her through the house."

 Ira objected that the out-of-court statements purportedly made by Helen constituted
hearsay, but the county court allowed the statements under the "excited utterance"
exception to hearsay. See Tex. R. Evid. 803(2) (exempting "[a] statement relating to a
startling event or condition made while the declarant was under the stress of excitement
caused by the event or condition" from the hearsay rule). Ira then attempted to discredit
Helen's statements by introducing matters that pertained to an upcoming guardianship
proceeding for Helen. Ira's attorney stated that his specific intent in introducing the
guardianship matters was to demonstrate that Helen was mentally incompetent, and
therefore, her out-of-court statements were not trustworthy. The court, however, did not
allow Ira to present the evidence. Ira did not make an offer of proof on the evidence at that
time.

 At the conclusion of the hearing, the court found that a protective order against Ira
was justified, and it issued an order stating that "family violence, as defined in § 71.004 of
the Texas Family Code, has occurred" and that "family violence is likely to occur again in
the future." The order prohibited Ira from going within 200 feet of or communicating with
Helen, Linda, or Michael. Ira then filed a bill of exceptions, in which he complained about
the county court's ruling prohibiting him from introducing evidence of Helen's mental
incompetency.

 Ira timely appealed the county court's decision to issue the order. The order expired
exactly two years later on December 22, 2006, and Helen passed away during the
pendency of the appeal.

II. Mootness

 Although the issue of mootness has not been raised or briefed by either party, we
must address whether the expiration of the protective order has rendered this case moot
before we examine the merits of Ira's claim. See Labrado v. County of El Paso, 132
S.W.3d 581, 589 (Tex. App.-El Paso 2004, no pet.) (describing mootness as "a
component of subject matter jurisdiction"); see also Hatten v. Univ. Interscholastic League,
No. 13-06-313-CV, 2007 Tex. App. LEXIS 7795, at *4 (Tex. App.-Corpus Christi Sept. 27,
2007, no pet. h.) (mem. op.). In this case, the appeal is not moot due to the "collateral
consequences" exception to the mootness doctrine. See Cummings, 13 S.W.3d at 475.

 The doctrine of mootness "limits courts to deciding cases in which an actual
controversy exists." In re Salgado, 53 S.W.3d 752, 757 (Tex. App.-El Paso 2001, orig.
proceeding). "The general rule is that a case becomes moot, and thus unreviewable, when
it appears that a party seeks to obtain relief on some alleged controversy when in reality
none exists." Schaban-Maurer v. Maurer-Schaban, No. 2-06-368-CV, 2007 Tex. App.
LEXIS 8109, at *10 (Tex. App.-Fort Worth Oct. 11, 2007, no pet. h.) (citing Williams v.
Lara, 52 S.W.3d 171, 184 (Tex. 2001)). It would be a mere academic exercise for an
appellate court to attempt to decide a moot case. Salgado, 53 S.W.3d at 757.

 Texas law, however, does recognize a "collateral consequences" exception to the
mootness doctrine. Gen. Land Office of State of Tex. v. OXY U.S.A., Inc., 789 S.W.2d
569, 571 (Tex. 1990). The "collateral consequences" exception is applied when prejudicial
events have occurred and the effects continue "to stigmatize individuals long after the
judgment has ceased to operate." Cummings, 13 S.W.3d at 475. It is only invoked under
narrow circumstances when vacating the underlying judgment cannot cure adverse
consequences suffered by the appellant. Marshall v. Housing Auth. of San Antonio, 198
S.W.3d 782, 789 (Tex. 2006).

 Appeals of expired protective orders issued for family violence often fall into this
"collateral consequences" exception because although such orders may ultimately expire,
the stigma attached to them generally does not. Schaban-Maurer, 2007 Tex. App. LEXIS
8109, at **11-12; Salgado, 53 S.W.3d at 757; Cummings, 13 S.W.3d at 475. The effects
of a family violence protective order continue to stigmatize individuals long after the date
of expiration. Schaban-Maurer, 2007 Tex. App. LEXIS 8109, at *11. This stigma is not
only a social burden; there are also "attendant legal consequences to being the subject of
such a protective order." Id. at **11-12 (noting that the family code requires courts to
consider a history of domestic violence when judging child conservatorship) (citing Tex.
Fam. Code Ann. § 153.004(f) (Vernon Supp. 2006)).

 The expiration of the protective order, therefore, does not render this appeal moot. 
 See id. The very fact that the order was issued has a potential impact on Ira's legal rights,
and thus, we are obligated to consider his appeal. Id.

III. Standard of Review

 The Fort Worth Court of Appeals recently observed that the courts of appeals are
split on the proper standard of review applicable to appeals of protective orders. 
Schaban-Maurer, 2007 Tex. App. LEXIS 8109, at **12-13. Some courts review protective
orders for legal and factual sufficiency of the evidence, see id., while others review for
abuse of discretion. See id. (citing Thompson v. Thompson-O'Rear, No. 06-03-00129-CV,
2004 Tex. App. LEXIS 5033, at *2 (Tex. App.-Texarkana June 8, 2004, no pet.) (mem.
op.)).

 In a recent memorandum opinion, we relied on precedent from the First Court of
Appeals in applying a legal and factual sufficiency review. See Gonzalez v. Rangel, No.
13-05-641-CV, 2006 Tex. App. LEXIS 7254, at *4 (Tex. App.-Corpus Christi Aug. 17,
2006, no pet.) (mem. op.) (citing Vongontard v. Tippit, 137 S.W.3d 109, 110 (Tex.
App.-Houston [1st. Dist.] 2004, no pet.)). In this case, we will follow the lead of our
memorandum opinion--and the jurisprudence of the Austin, Fort Worth, and Houston
appeals courts--by applying a legal and factual sufficiency review. Schaban-Maurer, 2007
Tex. App. LEXIS 8109, at *10 ; Vongontard, 137 S.W.3d at 110; B.C. v. Rhodes, 116
S.W.3d 878, 883-84 (Tex. App.-Austin 2003, no pet.); see also Gonzalez, 2006 Tex. App.
LEXIS 7254, at *4.

 "A legal sufficiency challenge may only be sustained when (1) the record discloses
a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of
evidence from giving weight to the only evidence offered to prove a vital fact, (3) the
evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence
establishes conclusively the opposite of a vital fact." Schaban-Maurer, 2007 Tex. App.
LEXIS 8109, at *13 (citing Robert W. Calvert, "No Evidence" and "Insufficient Evidence"
Points of Error, 38 Tex. L. Rev. 361, 362-63 (1960)). In our determination of legal
sufficiency, "we must consider evidence favorable to the finding if a reasonable fact-finder
could, and disregard evidence contrary to the finding unless a reasonable fact-finder could
not." Id. (citing City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005)).

 In a factual sufficiency review, we review all the evidence that supports or
undermines the finding. Golden Eagle Archery v. Jackson, 116 S.W.3d 757, 761-62 (Tex.
2003); see also Gonzalez, 2006 Tex. App. LEXIS 7254, at **5-6. A factual sufficiency
challenge may only be maintained if the finding is so weak or the evidence to the contrary
is so overwhelming that the answer ought to be set aside and a new trial ordered.
Schaban-Maurer, 2007 Tex. App. LEXIS 8109, at *14.

IV. Issues

 Ira raises three arguments against the protective order: (1) that the county court
erred in finding him guilty of family violence; (2) that the county court erred in excluding
evidence that Helen was mentally incompetent to testify; and (3) that the county court erred
in determining that family violence would occur again in the future. We disagree with each
argument.

A. Finding of Prior Family Violence

 Ira does not deny Linda's allegations of his conduct on November 23. Instead, Ira's
principal argument on appeal is that the admitted conduct did not constitute "family
violence" as the term is defined under the family code. See Tex. Fam. Code Ann. § 71.004
(Vernon 2002). We believe, however, that Ira's conduct meets the definition of family
violence.

 Family violence is "an act by a member of a family or household against another
member of the family or household that is intended to result in physical harm, bodily injury,
assault, or sexual assault or that is a threat that reasonably places the member in fear of
imminent physical harm, bodily injury, assault, or sexual assault, but does not include
defensive measures to protect oneself." Id. (emphasis added). Ira's behavior fits under
this definition, even though Ira never actually struck his wife or daughter because the code
provides that putting a family member "in fear of imminent physical harm, bodily injury, [or]
assault" constitutes family violence. Id. Thus, the allegations that Ira made threats to his
wife and daughter and raised his fist at his daughter are sufficient to implicate his conduct
as "family violence." Id.

 Moreover, the evidence that the conduct occurred is legally and factually sufficient. 
Linda's sworn affidavit, made on December 2, 2003, alleges that on November 27 of that
year, Ira "went into a rage" when she was at his house. In particular, Linda alleges in the
affidavit that Ira "grabbed [her] with his left hand and pulled back to slap [her] with his right
hand," "drew back his left fist to hit [her]," and "grabbed a handful of [her] hair and pulled." 
These statements were undisputed at the hearing because Ira did not call any witnesses
to counter the allegations, nor did he testify himself in order to offer a different account of
events. Additionally, undisputed testimony from the hearing revealed that Ira had grown
increasingly violent in the months leading up to his arrest and had repeatedly threatened
Helen and made her fearful. Linda and Clela both testified on these matters, and Linda
specifically mentioned a bruise on Helen's arm, which she believed was the result of a blow
from Ira. The daughters' testimony is supported by testimony from the two members of the
sheriff's department who recounted similar observations about Helen's fearfulness.

 Applying the standards of legal sufficiency review, we are compelled to affirm the
county court's protective order. The testimony from Ira's daughters and the two members
of the sheriff's department does not constitute a complete absence of vital fact, we are not
barred by any rules of evidence from considering the evidence, and the evidence does not
establish conclusively the opposite of a vital fact. See Schaban-Maurer, 2007 Tex. App.
LEXIS 8109, at *13.

 Finally, the evidence certainly amounts to more than a "mere scintilla." Id. "More
than a scintilla of evidence exists if the evidence furnishes some reasonable basis for
differing conclusions by reasonable minds about the existence of a vital fact." See id. at
14. Testimony from both of Ira's daughters about his behavior towards Helen offers a
reasonable basis for differing conclusions by reasonable minds. Therefore, it cannot be
said that there is less than a scintilla of evidence. See id.

 Nor can it be said that the evidence is factually insufficient because the finding of
family violence in this case is not so weak, nor is the evidence to the contrary so
overwhelming, that the finding of family violence ought to be set aside. Id. (citing Garza v.
Alviar, 395 S.W.2d 821, 823 (Tex. 1965)). Indeed, there is no evidence to the contrary
because Ira did not offer any contradicting account of events.

 Finally, we disagree with Ira's argument that his November 27 conduct was justified
under the penal code because Linda was a trespasser on his property. Evidence was
presented at the hearing that even after ordering Linda not to return to his house, Ira
phoned her on multiple instances and requested that she take Helen to Linda's household. 
Having specially consented to Linda's presence at the home, Ira cannot reasonably argue
that Linda's presence constituted a trespass. See Tex. Penal Code Ann. § 30.05(a)
(Vernon Supp. 2007). Furthermore, Linda was with Helen when she arrived at the
Clements home, and she believed she had Helen's consent to enter the premises. The
county court did not err, therefore, in finding sufficient evidence to find Ira guilty of family
violence.

B. Evidence that Helen was incompetent to testify


 Ira also argues that he was denied a fair hearing because the lower court did not
permit him to present evidence that Helen was mentally incompetent, and therefore, her
out-of-court statements, which were introduced by his daughters, were untrustworthy. We
do not reach the issue, however, because we believe that if any error existed, it was
harmless in light of the other testimony offered at the hearing. See Tex. R. App. P.
44.1(a)(1) ("No judgment may be reversed on appeal on the ground that the trial court
made an error of law unless the court of appeals concludes that the error complained of
. . . probably caused the rendition of an improper judgment.").

 If the county court erred by refusing to allow evidence of Helen's mental
incompetency, then, according to Ira, a properly conducted hearing would have excluded
all testimony referencing Helen's out-of-court statements. Such a hearing, however, still
would have featured the following significant evidence implicating Ira:(1) testimony from
Linda that Ira had assaulted her and forcefully grabbed Helen on November 27th, (2)
testimony from Officer Miles corroborating Linda's version of events, (3) testimony from
Officer Miles that Ira had stated that he "should have beat the hell out of [Linda]", (4)
testimony that Ira had verbally and physically abused the housekeeper and Helen's
caretaker, (5) testimony from Linda that she had seen a bruise on Helen's arm in the shape
of a thumb and fingers (suggesting that someone had struck her), and (6) testimony from
Officer Bensfield that Helen appeared nervous and shaken when he came to arrest Ira on
Dec. 2nd.

 In light of the significant evidence weighing against Ira, the possibility that Helen's
out-of-court statements were untrustworthy is harmless, and thus we are prohibited from
reversing the trial court's order. See id.; see also Smith v. Smith, No. 11-04-00023-CV,
2005 Tex. App. LEXIS 1983, at *7 (Tex. App.-Eastland March 17, 2005, no pet.) (mem.
op.) (declining to address whether the trial court in a family violence protective order
hearing had erred by admitting certain evidence because the evidence was "merely
cumulative of other evidence"). (1)

C. Finding of future family violence

 Ira's final argument on appeal is that the lower court was in error to find that family
violence would likely occur again in the future. We again disagree.

 In parental termination and child custody cases it is well-settled that "evidence that
a parent has engaged in abusive or neglectful conduct in the past permits an inference that
the parent will continue this behavior in the future." In re T.L.S. and R.L.P., 170 S.W.3d
164, 166 (Tex. App.-Waco 2005, no pet.). An extensive body of case law from the
appellate courts now directly extends this principle to family violence protective order
cases. See id.; Schaban-Maurer, 2007 Tex. App. LEXIS 8109, at **15-16; In re Epperson,
213 S.W.3d 541, 544 (Tex. App.-Texarkana 2007, no pet.); In re M.G.M., 163 S.W.3d 191,
202 (Tex. App.-Beaumont 2005, pet. denied); see also Banargent v. Brent, No.
14-05-00574-CV, 2006 Tex. App. LEXIS 1561, at *3 (Tex. App.-Houston [14th Dist.] Feb.
28, 2006, no pet.) (mem. op.). "Oftentimes, past is prologue; therefore, past violent
conduct can be competent evidence which is legally and factually sufficient to sustain the
award of a protective order." Epperson, 213 S.W.3d at 544 (citing T.L.S., 170 S.W.3d at
166).

 Moreover, a period of less than one year that is marked by violent behavior--such
as the eight to ten months during which Ira became violent, according to the testimony
offered by his daughters--is sufficient to find that family violence could occur again in the
future. See id. at 543.

 Ira argues that because the testimony at the hearing established that he had been
non-violent and peaceful in the past, the evidence was insufficient that he had a past
history of violence and would likely be violent again in the future. This argument, however,
fails to take account of the considerable testimony describing Ira as having become
"increasingly violent and angry" over the previous eight months.

 Although there is case law which suggests that past violence is insufficient for a
finding that future violence is likely to occur, these cases concern single, isolated acts of
violence. See Schaban-Maurer, 2007 Tex. App. LEXIS 8109, at **17-18 (citing In re J.A.T.,
No. 13-04-00477-CV, 2005 Tex. App. LEXIS 6618, at *1 (Tex. App.-Corpus Christi Aug.
18, 2005, no pet.) (mem. op.)). That case law is inapposite here because the testimony
offered by Ira's daughters at the protective order hearing indicates a pattern of violent
behavior over several months--not merely a single incident. The lower court, therefore,
did not err in finding that family violence could occur again in the future. 

V. Conclusion

 The testimony from Ira's daughters regarding his increasingly violent behavior in the
months leading up to his arrest, is legally and factually sufficient evidence to support the
protective order. Moreover, Ira's arguments that his threat of force was justified to ward
off a trespasser, that he was prejudiced by the county court's refusal to admit evidence of
Helen's incompetence to testify, and that it was an error to find that family violence would
occur again in the future, all fail. Accordingly, we affirm the judgment of the county court.


 _____________________________

 GINA M. BENAVIDES,

 Justice



Opinion delivered and filed this

the 17th day of January, 2008.

1. Instead of making an offer of proof to preserve error on the issue of the county court's exclusion of
evidence, Ira opted to file a formal bill of exceptions. See Tex. R. App. P. 33.2. The parties dispute whether
the bill of exceptions adequately preserved error, but we need not address the issue because, as we note in
the body of the opinion, any error would have been harmless.