**Ex parte Roberto FLORES, Appellant.**

No. 08–01–00213–CR.

Court of Appeals of Texas,
El Paso.

July 25, 2003.

Discretionary Review Refused
April 28, 2004.

Michael R. Gibson, El Paso, for appellant.

Jaime E. Esparza, Dist. Atty., El Paso, for state.

Before Panel No. 4 BARAJAS, C.J., LARSEN, and McCLURE, JJ.

## OPINION

RICHARD BARAJAS, Chief Justice.

This is an appeal from the trial court's denial of Appellant's requested relief pursuant to a writ of habeas corpus. We affirm the trial court's order denying the requested relief.

## I. SUMMARY OF THE EVIDENCE

Appellant filed his application for writ of habeas corpus on April 24, 2001. A hearing on the writ was held on May 10, 2001. The evidence adduced at the writ of habeas corpus hearing reveals that on March 23, 2001, Appellant was arrested for an offense involving family violence. He was taken before Magistrate James T. Carter and Judge Carter issued a Magistrate's Emergency Order for the Protection of the Family and/or Household pursuant to Texas Code of Criminal Procedure Article 17.292. Appellant was prohibited from committing acts of family violence regarding Martha Flores. Further, Appellant was prohibited from communicating directly with any member of the protected parties in a threatening or harassing manner, and he was prohibited from communicating any threats to such parties. The order also prohibited Appellant from engaging in conduct that constituted stalking regarding a member of the family or household. Lastly, Appellant was forbidden from going within 200 yards of the family residence and the protected residents, the place of employment located at 1359 Lomaland, and the schools of the two children except incidental contact at LeBarron Elementary School where Appellant's daughter attended and Appellant worked.

The order stated that a violation of the order by commission of an act prohibited by the order may be punishable by a fine of up to $4,000 or by confinement in jail for a period as long as one year or both. It further stated that an act that results in

family violence or a stalking offense may be prosecuted as a separate misdemeanor or felony offense. The order stated that an act prosecuted as a separate felony offense, would be punishable by confinement in prison for at least two years. The order was effective until the 23rd day of May, 2001—not to exceed sixty-one days. It was signed by both Judge Carter and Appellant.

Judge Carter testified that Article 17.292 did not provide for a modification or cancellation procedure. Further, no procedure for modification or cancellation was provided in the statute. There is no provision for a hearing. Judge Carter stated that he did not schedule a hearing when he issued this type of protective order, but he would entertain a review, modification, or cancellation of the order. It was Judge Carter's opinion that he could modify or cancel the Article 17.292 order within the sixty-one day period that the protective order was allowed to be in effect. He testified that there was no provision in the statute for one who is the subject of such an order to present evidence in opposition, but that he had allowed such evidence on occasion. Judge Carter stated that he had allowed such evidence in this case and had adjusted the order accordingly.

Judge Carter also testified that Article 17.292 requires that someone be under arrest when such an order is issued, and that he always had either a probable cause affidavit or a police report to review. He stated that he structured the order based upon the information contained in the document before him and had done so in this case.

Appellant testified that he was an assistant principal and he worked at LeBarron Elementary School. He stated that he had been living with his sister since the issuance of the protective order. He had no need to go to the family residence.

Enrique Medina, an El Paso Police Officer, stated that on March 22, 2001, he arrested Appellant after meeting with Martha Flores and preparing an arrest warrant. Medina stated that Flores was distraught. Based on his observations of Flores, Medina arrested Appellant and requested a protective order from Judge Carter.

## II. DISCUSSION

In Issue No. One, Appellant asserts that the constitutionality or statutory validity of Article 17.292 has not become moot due to the expiration of the protective order.[1] The mootness doctrine limits

---

1. TEX.CODE CRIM. PROC. ANN. art. 17.292 (Vernon Supp.2003) entitled "Magistrate's Order for Emergency Protection" provides:

(a) At a defendant's appearance before a magistrate after arrest for an offense involving family violence or an offense under Section 42.072, Penal Code, the magistrate may issue an order for emergency protection on the magistrate's own motion or on the request of:
(1) the victim of the offense;
(2) the guardian of the victim;
(3) a peace officer; or
(4) the attorney representing the state.
(b) At a defendant's appearance before a magistrate after arrest for an offense involving family violence, the magistrate shall issue an order for emergency protection if the arrest is for an offense that also involves:
(1) serious bodily injury to the victim; or
(2) the use or exhibition of a deadly weapon during the commission of an assault.
(c) The magistrate in the order for emergency protection may prohibit the arrested party from:
(1) committing:
(A) family violence or an assault on the person protected under the order; or
(B) an act in furtherance of an offense under Section 42.072, Penal Code;
(2) communicating:
(A) directly with a member of the family or household or with the person protected un-

der the order in a threatening or harassing manner; or

(B) a threat through any person to a member of the family or household or to the person protected under the order;

(3) going to or near:

(A) the residence, place of employment, or business of a member of the family or household or of the person protected under the order; or

(B) the residence, child care facility, or school where a child protected under the order resides or attends; or

(4) possessing a firearm, unless the person is a peace officer, as defined by Section 1.07, Penal Code, actively engaged in employment as a sworn, full-time paid employee of a state agency or political subdivision.

(d) The victim of the offense need not be present in court when the order for emergency protection is issued.

(e) In the order for emergency protection the magistrate shall specifically describe the prohibited locations and the minimum distances, if any, that the party must maintain, unless the magistrate determines for the safety of the person or persons protected by the order that specific descriptions of the locations should be omitted.

(f) To the extent that a condition imposed by an order for emergency protection issued under this article conflicts with an existing court order granting possession of or access to a child, the condition imposed under this article prevails for the duration of the order for emergency protection.

(g) An order for emergency protection issued under this article must contain the following statements printed in bold-face type or in capital letters:

"A VIOLATION OF THIS ORDER BY COMMISSION OF AN ACT PROHIBITED BY THE ORDER MAY BE PUNISHABLE BY A FINE OF AS MUCH AS $4,000 OR BY CONFINEMENT IN JAIL FOR AS LONG AS ONE YEAR OR BY BOTH. AN ACT THAT RESULTS IN FAMILY VIOLENCE OR A STALKING OFFENSE MAY BE PROSECUTED AS A SEPARATE MISDEMEANOR OR FELONY OFFENSE. IF THE ACT IS PROSECUTED AS A SEPARATE FELONY OFFENSE, IT IS PUNISHABLE BY CONFINEMENT IN PRISON FOR AT LEAST TWO YEARS. THE POSSESSION OF A FIREARM BY A PERSON, OTHER THAN A PEACE OFFICER, AS DEFINED BY SECTION 1.07, PENAL CODE, ACTIVELY ENGAGED IN EMPLOYMENT AS A SWORN, FULL–TIME PAID EMPLOYEE OF A STATE AGENCY OR POLITICAL SUBDIVISION, WHO IS SUBJECT TO THIS ORDER MAY BE PROSECUTED AS A SEPARATE OFFENSE PUNISHABLE BY CONFINEMENT OR IMPRISONMENT.

"NO PERSON, INCLUDING A PERSON WHO IS PROTECTED BY THIS ORDER, MAY GIVE PERMISSION TO ANYONE TO IGNORE OR VIOLATE ANY PROVISION OF THIS ORDER. DURING THE TIME IN WHICH THIS ORDER IS VALID, EVERY PROVISION OF THIS ORDER IS IN FULL FORCE AND EFFECT UNLESS A COURT CHANGES THE ORDER."

(h) The magistrate issuing an order for emergency protection under this article shall send a copy of the order to the chief of police in the municipality where the member of the family or household or individual protected by the order resides, if the person resides in a municipality, or to the sheriff of the county where the person resides, if the person does not reside in a municipality. If the victim of the offense is not present when the order is issued, the magistrate issuing the order shall order an appropriate peace officer to make a good faith effort to notify, within 24 hours, the victim that the order has been issued by calling the victim's residence and place of employment. The clerk of the court shall send a copy of the order to the victim.

(i) If an order for emergency protection issued under this article prohibits a @person from going to or near a child care facility or school, the magistrate shall send a copy of the order to the child care facility or school.

(j) An order for emergency protection issued under this article is effective on issuance, and the defendant shall be served a copy of the order in open court. An order for emergency protection issued under this article remains in effect up to the 61st day but not less than 31 days after the date of issuance.

(k) To ensure that an officer responding to a call is aware of the existence and terms of an order for emergency protection issued under this article, each municipal police department and sheriff shall establish a procedure within the department or office to provide adequate information or access to information for peace officers of the names of persons protected by an order for emergency protection issued under this ar-

courts to deciding cases in which an actual controversy exists. *In re Salgado*, 53 S.W.3d 752, 757 (Tex.App.-El Paso 2001, no pet.); *Olson v. Commission for Lawyer Discipline*, 901 S.W.2d 520, 522 (Tex.App.-El Paso 1995, no writ). When there has ceased to be a controversy between the litigating parties which is due to events occurring after judgment has been rendered by the trial court, the decision of an appellate court would be a mere academic exercise and the court may not decide the appeal. *Salgado*, 53 S.W.3d at 757; *Olson*, 901 S.W.2d at 522. In most circumstances, the expiration of an order granting injunctive or protective relief would render the issue moot. *Salgado*, 53 S.W.3d at 757. However, two exceptions to the mootness doctrine currently exist: (1) the "capable of repetition yet evading review" exception and (2) the "collateral consequences" exception. *Salgado*, 53 S.W.3d at 757; *Olson*, 901 S.W.2d at 522. The first exception applies when the challenged act is of such short duration that an Appellant cannot obtain review before the issue becomes moot. *Salgado*, 53 S.W.3d at 757. The second exception has been applied when Texas courts have perceived that prejudicial events have occurred "whose effects continued to stigmatize helpless or hated individuals long after the unconstitutional judgment had ceased to operate." *Id.* In such an instance, the effects are not absolved by mere dismissal of the cause as moot. *Id.*

In the present case, we find that the "capable of repetition yet evading review"

exception to the mootness doctrine applies. Certainly, a sixty-one day protective order which has expired before an appellate opinion can be rendered is capable of repetition yet evading review. *See In the Matter of Cummings*, 13 S.W.3d 472, 475 (Tex. App.-Corpus Christi 2000, no pet). Further, there is a stigma attached to the issuance of a protective order as well as attendant legal consequences such as the fact that the Texas Family Code requires a court to consider the commission of family violence in making child custody determinations. *See* TEX. FAM.CODE ANN. § 153.004 (Vernon 2002). Accordingly, we find that the "collateral consequences" exception also applies. *See Salgado*, 53 S.W.3d at 757–58; *Cummings*, 13 S.W.3d at 475. Appellant's Issue No. One is overruled.

In Issue No. Two, Appellant contends that the right to a jury trial, entitlement to counsel, compulsory process and confrontation of witness, the right to due course of law, and the ability to petition for redress of grievances found in the Constitution of the State of Texas are violated by Article 17.292 in that the statute does not provide for any of those rights. In Issue No. Three, Appellant maintains that the Magistrate's Order for Emergency Protection statute denies the statutory rights found in the Texas Code of Criminal Procedure such as the right to jury, counsel, confrontation of witness, due process, freedom from unreasonable seizure, jury trial, and a liberal construction of the code.

ticle and of persons to whom the order is directed. The police department or sheriff may enter an order for emergency protection issued under this article in the department's or office's record of outstanding warrants as notice that the order has been issued and is in effect.
(*l*) In the order for emergency protection, the magistrate may suspend a license to

carry a concealed handgun issued under Section 411.177, Government Code, that is held by the defendant.
(m) In this article:
(1) "Family," "family violence," and "household" have the meanings assigned by Chapter 71, Family Code.
(2)"Firearm" has the meaning assigned by Chapter 46, Penal Code.

█ Initially, we must address the State's claim that Appellant has waived any contention that the challenged statute is unconstitutional as applied to him. When a litigant asserts that a statute is facially unconstitutional, he contends that the statute is unconstitutional in all its applications. In contrast, under an "unconstitutional as applied" challenge, the moving party generally concedes the constitutionality of the statute, but argues that it is being unconstitutionally applied to his particular circumstances. *See Tex. Boll Weevil Eradication Found., Inc. v. Lewellen,* 952 S.W.2d 454, 461 n. 5 (Tex. 1997). One may raise a facial challenge for the first time on appeal. However, in order to preserve an "as-applied" challenge to the constitutionality of a statute, the defendant must have first raised the issue in the trial court. *See Garcia v. State,* 887 S.W.2d 846, 861 (Tex.Crim.App. 1994). The State contends that Appellant did not raise the "as-applied" challenge before Judge Carter and has waived the issue on appeal. While we have some reservations about requiring a person probably not represented by counsel at a summary proceeding after arrest where the taking of a record is unlikely to occur to lodge such an objection, we find it has no implication in the present appeal. We take it from Appellant's pleadings and brief that he is asserting a facial challenge to the statute in that he asserts that it is constitutionally infirm in all its applications.

█ When reviewing the constitutionality of a statute, we are to presume the statute is valid and the legislature has not acted unreasonably or arbitrarily in enacting it. *Ex parte Granviel,* 561 S.W.2d 503, 511 (Tex.Crim.App.1978). The burden rests on the party challenging the statute to establish its unconstitutionality. *Id.* Further, we are to uphold the statute if we can determine a reasonable construction which will render the statute constitutional and carry out the legislative intent. *Ely v. State,* 582 S.W.2d 416, 419 (Tex.Crim.App.1979). A facial challenge is the most difficult because the challenger must establish that no set of circumstances exists under which the statute would be valid. *Briggs v. State,* 789 S.W.2d 918, 923 (Tex.Crim.App.1990). When challenging the constitutionality of a statute, a defendant must first make a showing that the statute is unconstitutional as applied to him; that it may be unconstitutional as to others is not sufficient. *Vuong v. State,* 830 S.W.2d 929, 941 (Tex.Crim.App.1992); *Santikos v. State,* 836 S.W.2d 631, 633 (Tex.Crim.App.1992).

█ In essence, Appellant is contending that Article 17.292 fails to provide a right to a hearing before the issuance of the emergency protective order. With the exception of emergency situations, due process requires that when a governmental entity seeks to terminate a protected interest, it must afford notice and opportunity for a hearing which is appropriate to the nature of the case before the termination becomes effective. *See Board of Regents v. Roth,* 408 U.S. 564, 570 n. 7, 92 S.Ct. 2701, 2705 n. 7, 33 L.Ed.2d 548 (1972).

No court in this state has determined the constitutionality of Article 17.292. However, courts in other jurisdictions have ruled on the constitutionality of statutes similar to the one under consideration in this case. In *Sanders v. Shephard,* 185 Ill.App.3d 719, 133 Ill.Dec. 712, 541 N.E.2d 1150, 1155 (1 Dist.1989), the Illinois appellate court held that an emergency protective order issued pursuant to a domestic violence act met procedural due process requirements because evidence of domestic violence constitutes a showing of exigent circumstances. In *State v. John Doe,* 46

Conn.Supp. 598, 765 A.2d 518 (2000), the state authorities requested a protective order for a spouse by means of the investigating officer compiling a report concerning an act of domestic violence. The court held that the offending spouse's due process rights were not violated by the issuance of a protective order without an adversarial hearing. The court reasoned that the need for prompt assumption of judicial control following a family violence arrest outweighed the need for adversary procedures and held that the protective order was constitutionally entered. *Id.* at 527–28. In a similar situation, the New York District Court upheld the issuance of protective orders without benefit of an adversarial hearing. *See People v. Koertge,* 182 Misc.2d 183, 701 N.Y.S.2d 588, 593–96 (N.Y.Dist.Ct.1998).

Appellant points to various provisions of TEX. FAM.CODE ANN. Title 4 (Vernon Supp. 2002) in support of his contentions. The provisions in Title 4 allow for protective orders up to two years. They contain an extensive series of due process procedures in order to obtain such orders. *See id.* A twenty-day ex parte order is available but it has a provision for a motion to vacate which is lacking in Article 17.292. *See* TEX. FAM.CODE ANN. § 83.004 (Vernon 2002). However, as decided in the other state authorities cited, it is the temporary and emergency nature of emergency protective orders which allows them to pass constitutional muster.[2]

Further, while Article 17.292 does not provide for a cancellation or modification procedure, the availability of the writ of habeas corpus procedure affords one the opportunity to obtain an adversarial hearing to contest the emergency protective order. This ameliorates the ex parte na-

ture of the procedure. *See Ex parte Shockley,* 683 S.W.2d 493, 495 (Tex.App.-Dallas 1984, pet. dism'd). We find that Article 17.292 is constitutional. Appellant's Issues Nos. Two and Three are overruled.

Having overruled each of Appellant's issues on review, we affirm the trial court's denial of Appellant's writ of habeas corpus.

---

2. Appellant also analogizes to the bail provisions in the Code of Criminal Procedure where he asserts greater due process proce-

dure are provided. However, these provisions do not contemplate the emergency situation provided for in Article 17.292.