**Opinion issued February 28, 2019**



In The

# Court of Appeals

### For The

## First District of Texas

_____

### NO. 01-16-00390-CR

_____

### HUNG DASIAN TRUONG, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 339th District Court
Harris County, Texas
Trial Court Case No. 1172979**

---

### O P I N I O N

Appellant, Hung Dasian Truong, was charged with the second-degree felony

offense of manslaughter.[1] In 2009, the trial court found appellant not guilty by reason

---

[1]     *See* TEX. PENAL CODE ANN. § 19.04.

of insanity and subsequently entered an order committing appellant for inpatient treatment. The trial court renewed the order for inpatient commitment for each of the followed six years. Appellant appeals the trial court's May 3, 2016 recommitment order, contending in one issue that the State failed to prove by clear and convincing evidence that further inpatient treatment was necessary.

We dismiss the appeal as moot.

## Background

On June 29, 2008, appellant drove through a traffic barricade at a high rate of speed and struck Houston Police Department Officers G. Gryder and F. Pylon. Officer Gryder died as a result of his injuries, and the State charged appellant with the offense of manslaughter. While appellant's criminal case was pending, the trial court ordered two psychologists to evaluate appellant for competency and sanity. Appellant reported to the psychologists that he had been hearing voices for several years and that he heard voices while he was driving home on the day of the incident. Appellant reported that he thought the voices he heard on that day "were from God or from the devil," that the voices were fighting, that the voices told him to run over the officers with his car, and that he "thought [Officer Gryder] was a demon" and "the arresting officers were angels." Both psychologists concluded that appellant suffered from schizophrenia and was legally insane at the time of the offense.

2

In December 2009, the trial court found appellant not guilty of the charged offense by reason of insanity and ordered appellant committed to North Texas State Hospital for thirty days for evaluation. In January 2010, the trial court found, by clear and convincing evidence, that appellant had a severe mental illness, that as a result of that illness appellant was likely to cause serious bodily injury or harm to another if he were not provided treatment and supervision, that appropriate treatment and supervision could not be safely or effectively provided on an outpatient basis, and that inpatient treatment was necessary to protect the safety of others. The trial court ordered appellant committed to North Texas State Hospital for inpatient treatment for 180 days. Appellant was later transferred to Rusk State Hospital.

The trial court renewed the commitment orders on an annual basis and ordered appellant recommitted to Rusk State Hospital for inpatient treatment each year from 2010 through 2016. The trial court's May 3, 2016 recommitment order is the subject of this appeal.

On March 30, 2016, Rusk State Hospital filed a recommendation with the trial court stating, "[I]t is this facility's recommendation that further hospitalization **IS NOT** indicated at this time." Dr. George Howland, an attending psychiatrist at Rusk, filed a report dated January 15, 2016, that stated his belief that appellant was not "a danger to himself or others," and Dr. Howland noted that although appellant was "still hearing an occasional voice," that voice was "not command in nature." Dr.

3

Howland recommended that appellant "be discharged to a personal care home in the community."

Despite Dr. Howland's recommendation, the State moved to renew appellant's inpatient treatment for another year, alleging that appellant had a severe mental illness, that as a result of his illness he was likely to cause serious bodily injury to another if not provided with treatment, and inpatient treatment was necessary to protect the safety of others. The State alleged that "[d]ue to the degree of severity" of appellant's illness, he was "at high risk for recurrence of these symptoms if not actively receiving treatment." The State requested renewal of the commitment order to "ensure continuity of care and supervision that supports the effective delivery of Inpatient treatment" and to "ensure that treatment and related services are available for" appellant.

The trial court held a hearing on the State's motion to renew the inpatient commitment order on May 3, 2016. Several witnesses testified at the hearing, including Dr. Howland, James Ferrell, a psychiatric nursing assistant at Rusk, Patrick Boots, a registered nurse at Rusk, Teresa Allen, a social worker for appellant's unit at Rusk, and Dr. Kathleen Gately, a psychiatrist at the Harris Center for Mental Health and I.D.D., Harris County's mental health authority. Ferrell, Boots, and Allen all testified that appellant had been a good patient while at Rusk,

and Dr. Howland and Dr. Gately both testified that, in their opinions, appellant was ready for outpatient care.

At the end of the hearing, the trial court stated the following on the record:

Mr. Truong needs lifetime treatment. Mr. Truong is doing better because he's in a controlled environment where doctors and a treatment team are available to evaluate his behavior and adjust his medication as needed.

Mr. Truong, if you stopped taking your medication, you could have another psychotic episode. You've been diagnosed with a schizoaffective disorder.

The Court hereby finds from clear and convincing evidence that the patient has a severe mental illness. And as a result of that mental illness, the patient is likely to cause serious bodily injury or serious harm to another if the patient is not provided treatment and supervision. Appropriate treatment and supervision for the patient's mental illness cannot be safely or effectively provided as outpatient or community-based treatment, and supervision and inpatient treatment or residential care is necessary to protect the safety of others.

The trial court signed a written order memorializing these findings and renewing appellant's inpatient commitment at Rusk State Hospital for another year on May 3, 2016 ("the 2016 recommitment order"). This appeal of the May 3, 2016 one-year commitment order followed.

While this appeal was pending, the 2016 recommitment order expired. The trial court held a hearing on May 1, 2017, to determine whether to renew appellant's inpatient commitment for another year. The trial court heard new evidence at this hearing and renewed appellant's inpatient commitment at Rusk State Hospital. On May 1, 2017, the trial court signed an order committing appellant for inpatient

5

treatment for another year ("the 2017 recommitment order"). Appellant appealed from the 2017 recommitment order. Ultimately, appellant decided that he no longer wished to pursue the appeal of the 2017 recommitment order, and a panel of this Court dismissed that appeal. *See Truong v. State*, No. 01-17-00343-CR, 2018 WL 1630177 (Tex. App.—Houston [1st Dist.] Apr. 5, 2018, no pet.) (mem. op., not designated for publication).

The 2017 recommitment order subsequently expired and the trial court held a hearing on May 10, 2018, to determine whether to renew appellant's inpatient commitment, and the court again signed a recommitment order. Appellant appealed from the May 10, 2018 order on the sole ground that the evidence was insufficient to support the recommitment order. That appeal is pending in this Court in appellate cause number 01-18-00454-CR.

## Justiciability

As a threshold issue, we must address whether appellant's appeal of the May 3, 2016 order has become moot as a result of the trial court's 2017 and 2018 recommitment orders.

"A case that is moot is normally not justiciable." *Pharris v. State*, 165 S.W.3d 681, 687 (Tex. Crim. App. 2005). The mootness doctrine limits courts to deciding cases in which an actual controversy exists between the parties. *Ex parte Flores*, 130 S.W.3d 100, 104–05 (Tex. App.—El Paso 2003, pet. ref'd). "When there has ceased

to be a controversy between the litigating parties which is due to events occurring after judgment has been rendered by the trial court, the decision of an appellate court would be a mere academic exercise and the court may not decide the appeal." *Id.* at 105; *see Jack v. State*, 149 S.W.3d 119, 123 n.10 (Tex. Crim. App. 2004) (per curiam) ("A case becomes moot on appeal when the judgment of the appellate court can no longer have an effect on an existing controversy or cannot affect the rights of the parties."); *State v. Garza*, 774 S.W.2d 724, 727 (Tex. App.—Corpus Christi 1989, pet. ref'd) ("It is axiomatic that a cause becomes moot when the appellate court's judgment cannot have any practical legal effect upon a controversy.").

The trial court signed the order that is the subject of this appeal on May 3, 2016. This order expired one year later, on May 3, 2017. Pursuant to Code of Criminal Procedure article 46C.270(c), appellant's appeal of the 2016 recommitment order "may not be considered moot solely due to the expiration of an order on which the appeal is based." TEX. CODE CRIM. PROC. ANN. art. 46C.270(c). However, the 2016 recommitment order did not merely expire. Instead, the trial court held a new hearing on May 1, 2017, heard new evidence concerning appellant's condition and behavior that it had not heard at the time it signed the 2016 recommitment order, considered new recommendations from appellant's treating psychiatrists, and signed a new order renewing appellant's inpatient commitment for another year, the 2017 recommitment order.

7

Although appellant initially appealed the 2017 recommitment order to this Court, appellant later determined that he no longer wished to pursue that appeal, and a panel of this Court dismissed that appeal. *See Truong*, 2018 WL 1630177. The 2017 recommitment order also expired and, on May 10, 2018, the trial court held a new hearing, heard new testimony, reviewed new recommendations, and signed a new order renewing appellant's inpatient commitment, the 2018 recommitment order. Appellant's appeal from that order is currently pending in this Court.

In response to a request for briefing from this Court on the question of whether the subsequent recommitment orders entered by the trial court rendered appellant's appeal from the 2016 recommitment order moot, appellant cites the Court of Criminal Appeals' opinion in *Pharris*, which recognized an exception to the mootness doctrine. The court stated in *Pharris*:

> A case that is moot is normally not justiciable. One exception to that general rule is when a claim is "capable of repetition, yet evading review." The United Stated Supreme Court has said that "the 'capable of repetition but evading review' doctrine [is] limited to the situation where two elements combine: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." We have adopted and applied this doctrine ourselves, as has the Texas Supreme Court.

*Pharris*, 165 S.W.3d at 687–88 (internal citations omitted); *see Ex parte Bohannan*, 350 S.W.3d 116, 119–20 (Tex. Crim. App. 2011) (recognizing "capable of

repetition, yet evading review" exception to mootness doctrine, but holding exception was not applicable to particular case).

Here, the challenged action was the trial court's entry of the 2016 recommitment order. By statute, recommitment orders of this nature are operative for one year before they expire. *See* TEX. CODE CRIM. PROC. ANN. art. 46C.261(h). Acquitted persons are also granted the right to appeal recommitment orders. *See id.* art. 46C.270(b)(3). The duration of such recommitment orders is not so short that an appeal of the order generally cannot be fully litigated prior to the order's expiration. *Cf. Pharris*, 165 S.W.3d at 688–89 (addressing whether appeal from "no bond" order in non-capital felony case, which expired sixty days after entry pursuant to Texas Constitution, was moot and holding that "capable of repetition, yet evading review" exception was satisfied). We hold that an appeal from a recommitment order presenting only the issue of insufficiency of the evidence to support recommitment, such as the one challenged here, does not fall within the "capable of repetition, yet evading review" exception to the mootness doctrine. *See id.*

Another recognized exception to the mootness doctrine is the collateral consequences exception, which "permits adjudication of the merits of a criminal case where . . . further penalties or disabilities"—adverse collateral legal consequences—can be imposed as a result of a judgment of conviction. *See Sibron v. New York*, 392 U.S. 40, 53–55, 88 S. Ct. 1889, 1898–99 (1968); *State v. Lodge*, 608 S.W.2d 910,

9

912 (Tex. 1980) (noting that adjudication of juvenile delinquency is stigmatized and "carried with it deleterious collateral effects and legal consequences"). Texas courts have applied the collateral consequences exception when the courts "have recognized that prejudicial events have occurred 'whose effects continued to stigmatize helpless or hated individuals long after the unconstitutional judgment has ceased to operate.'" *In re Salgado*, 53 S.W.3d 752, 757 (Tex. App.—El Paso 2001, orig. proceeding) (quoting *Gen. Land Office v. OXY U.S.A., Inc.*, 789 S.W.2d 569, 571 (Tex. 1990)); *see also Ex parte Sewell*, 495 S.W.3d 54, 56 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("The collateral-consequences exception is often applied by federal courts in criminal cases in which the adverse collateral consequences of a criminal conviction are viewed as preserving the existence of the dispute even though the convicted person has completely served the sentence imposed."). In these cases, "the effects are not absolved by mere dismissal of the cause as moot." *Ex parte Flores*, 130 S.W.3d at 105; *In re Salgado*, 53 S.W.3d at 757. Generally, to invoke the collateral consequences exception, the appellant must demonstrate (1) a concrete disadvantage has resulted from the judgment, and (2) the disadvantage will persist even if the judgment is vacated and the cause dismissed as moot. *In re S.J.C.*, 304 S.W.3d 563, 569 (Tex. App.—El Paso 2010, no pet.) (stating such in context of adjudication of juvenile delinquency) (citing *Marshall v. Hous. Auth. of City of San Antonio*, 198 S.W.3d 782, 789 (Tex. 2006)).

10

The State, in its response to our request for briefing on the issue of mootness, calls to our attention a line of cases stemming from *Campbell v. State*, decided under the statutory predecessor to Article 46C, former Code of Criminal Procedure article 46.03, which still applies to offenses committed before September 1, 2005. 68 S.W.3d 747 (Tex. App.—Houston [14th Dist.] 2001) ("*Campbell I*"), *aff'd*, 85 S.W.3d 176 (Tex. 2002) ("*Campbell II*"). Campbell, who, like appellant, had been found not guilty by reason of insanity and committed for inpatient treatment at Rusk State Hospital, appealed the trial court's June 2000 order recommitting him to inpatient treatment for another year. *See id.* at 752. On appeal, Campbell raised several arguments challenging the June 2000 recommitment order, including factual sufficiency of the evidence and a procedural challenge concerning whether the trial court had jurisdiction to hold a hearing on the renewal of his recommitment even though the State had not filed two "certificates of medical examination for mental illness." *Id.* at 750.

Before the Fourteenth Court could issue an opinion on Campbell's appeal from the June 2000 order, the trial court issued a new order in May 2001 recommitting Campbell for inpatient treatment, and the court requested briefing on whether the May 2001 order rendered the appeal of the June 2000 order moot. *Id.* at 752–53. Although the court noted that there was "no active current controversy about the June 2, 2000 order," the court held that the collateral consequences

11

exception to the mootness doctrine applied to save the appeal of the June 2000 order from dismissal. *Id.* at 753–54. The court reasoned that the appeal from the superseded recommitment order was not moot due to the "manifestly severe and prejudicially unfair" effect of an order of involuntary commitment to and confinement in a mental hospital "if the commitment is one that would not stand upon review in an effective appeal." *Id.* at 753 (quoting *Lodge*, 608 S.W.2d at 912 (holding that appeal from order committing patient for temporary mental health services was not rendered moot by patient's discharge during pendency of appeal due to short time period of commitment as well as "massive curtailment of liberty" and "adverse social consequences to individual" if commitment was improper)). Thus, the court addressed the merits of Campbell's appeal of the June 2000 recommitment order, despite the trial court's subsequent entry of the May 2001 order and affirmed the June 2000 order. *Id.* at 764. The Fourteenth Court held, among other holdings, that the recommitment hearing could proceed without two certificates of medical examination on file and that factually sufficient evidence supported the trial court's recommitment order. *Id.* at 758–60.

The Texas Supreme Court granted Campbell's petition for review on the question of whether the medical certificates described in the involuntary civil commitment scheme must be on file before a trial court could hold a hearing to determine whether to recommit for inpatient treatment a person who has been found

12

not guilty by reason of insanity of a criminal offense. *Campbell II*, 85 S.W.3d at 179–80. Before addressing the merits of this issue, the Texas Supreme Court stated, "We agree with the court of appeals that this issue is not moot because the trial court rendered subsequent orders continuing Campbell's commitment." *Id.* at 180.

Unlike this appeal, in which the only challenge is to the sufficiency of the evidence to support the trial court's May 3, 2016 recommitment order—an order that has been superseded by two subsequent orders reassessing appellant's recommitment under updated facts—*Campbell* also involved the important procedural issue of whether the trial court could even hold the recommitment hearing when the State had not filed two certificates of medical examination. *Campbell I*, 68 S.W.3d at 754–58. Thus, even though a subsequent recommitment order was entered by the trial court while the appeal of the June 2000 order was pending, the primary legal issue in *Campbell*—concerning the certificate requirement—remained live and unresolved by the entry of the subsequent order. *See id.* at 754 (noting that Campbell argued that compliance with certificate requirement was jurisdictional prerequisite to holding recommitment hearing); *see also Laney v. State*, 223 S.W.3d 656, 660 (Tex. App.—Tyler 2007, no pet.) (holding that while trial court's order ruling that acquitted person was not statutorily entitled to receive furloughs and passes to leave facility had expired, appeal from order was not moot because mental health authority had represented it would continue following trial court's construction of statute in

future and, thus, live controversy still existed). This central procedural issue in *Campbell*, unlike the solely factual issues presented in both *Campbell* and this case, was one that was clearly capable of repetition yet evading review, as subsequent one-year recommitment hearings were held and new recommitment orders entered while that procedural issue remained.

Here, in contrast to *Campbell*, the only argument appellant raises is whether sufficient evidence supports the 2016 recommitment order. Appellant was committed for inpatient treatment following his acquittal of manslaughter by reason of insanity in 2009, and he has been recommitted every year since. Although appellant challenges the 2016 recommitment order in this appeal and challenges the 2018 recommitment order in a separately-pending appeal, appellant requested that we dismiss his appeal from the 2017 recommitment order, which a panel of this Court did. *See Truong*, 2018 WL 1630177. Appellant has already suffered the stigma of being found not guilty by reason of insanity and the numerous unchallenged orders recommitting him for inpatient treatment, including a subsequent order to the underlying order at issue in this appeal. Thus, there is no stigma or adverse consequence that can be redressed by resolving this appeal on the merits. *See Ex parte Flores*, 130 S.W.3d at 105 (holding that collateral consequences exception applies when courts perceive that prejudicial events have occurred "whose effects continued to stigmatize helpless or hated individuals" long after judgment ceases to

14

operate); *see also Laney*, 223 S.W.3d at 660 (stating that commitment following acquittal for reason of insanity imposes no collateral consequences) (quoting *Jones v. United States*, 463 U.S. 354, 367 n.16, 103 S. Ct. 3043, 3051 n.16 (1983) ("A criminal defendant who successfully raises the insanity defense necessarily is stigmatized by the verdict itself, and thus the commitment causes little additional harm in this respect.")). Nor does appellant raise any issue that is capable of repetition yet evading review.

We conclude that, under the circumstances of this case, considering the merits of appellant's sufficiency challenge to the 2016 recommitment order would have no practical effect. That order has expired, and appellant is currently committed to inpatient treatment at Rusk State Hospital on the authority of the May 10, 2018 order. The question whether the evidence presented in 2016 was sufficient to support appellant's recommitment under a now-expired recommitment order is accordingly entirely superseded and rendered moot. *See Heckman v. Williamson Cty.*, 369 S.W.3d 137, 162 (Tex. 2012) ("[A] case is moot when the court's action on the merits cannot affect the parties' rights or interests."). We hold that appellant's appeal of the 2016 recommitment order has been rendered moot by the trial court's 2017 and 2018 recommitment orders. *See Ex parte Flores*, 130 S.W.3d at 104–05; *Garza*, 774 S.W.2d at 727. We therefore dismiss appellant's appeal of the 2016

recommitment order for lack of jurisdiction. *See Pharris*, 165 S.W.3d at 687 (stating that cases that are moot are normally not justiciable).

## Conclusion

We dismiss the appeal of the May 3, 2016 recommitment order for lack of jurisdiction.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Higley, and Landau.

Publish. TEX. R. APP. P. 47.2(b).