# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

NO. 03-25-00146-CR
NO. 03-25-00147-CR
NO. 03-25-00154-CR

---

**Ex parte Michael Gamez**

---

**FROM THE 331ST DISTRICT COURT OF TRAVIS COUNTY
NOS. D-1-DC-24-303455, D-1-DC-24-303456, & D-1-DC-24-303454,
THE HONORABLE CHANTAL ELDRIDGE, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

The State has indicted appellant Michael Gamez in separate causes for aggravated kidnapping, attempted aggravated sexual assault, and attempted sexual assault. *See* Tex. Penal Code §§ 15.01(a), 20.04(a)(4), 22.011(a)(1), .021(a)(1)(A), (2)(A)(iii). In each cause, Gamez filed an application for writ of habeas corpus, contending that his continued pretrial confinement was unlawful under article 17.151 of the Texas Code of Criminal Procedure and that the trial court was required to release him on personal bond or reduce his bonds to amounts that he could afford. *See* Tex. Code Crim. Proc. arts. 11.08, 17.151. The trial court granted the applications in part and reduced his bond amounts in the three causes to $4,500; $10,000; and $10,000, respectively. The court also maintained its earlier order that he wear a GPS monitor as a condition of his release. On appeal, Gamez contends that the trial court abused its discretion by failing to reduce his bonds to amounts that he could afford and by imposing a condition of

release that he could not afford. We reverse the trial court's orders and remand the causes for further proceedings.

## BACKGROUND

Gamez was arrested on November 15, 2024. In an indigence form, he swore that he had no assets and that $100 was "the most money [he] could reasonably pay to get out of jail within 24 hours after [his] arrest, including any contributions from family and friends." The trial court found him to be indigent and appointed an attorney for him. On the day of his arrest, Gamez's bonds were set at $5,000; $50,000; and $25,000, and he was ordered to have a GPS monitor installed at the jail prior to his release. In a motion for bond reduction filed shortly thereafter, Gamez stated that $500 was the total bond amount that he could afford.

He filed his three habeas applications on February 15, 2025—93 days after his arrest. He was indicted for aggravated kidnapping on February 18th and for the remaining two offenses on February 27th. In his applications, Gamez argued that because the State had not been ready for trial within ninety days of his arrest, he was entitled to be released on a personal bond or to have his bonds set at amounts that he could afford. He also asserted that under article 17.151, the trial court could not impose a bond condition that he was unable to afford.

The trial court held a hearing on February 19, 2025, at which Gamez testified. The State acknowledged during the hearing that he had not been indicted within ninety days, and defense counsel suggested a $125 bond in each cause. Gamez testified that he had been in jail and had not earned any money since his arrest and that he could post a total bond amount of $500. When asked on cross-examination how he came to the figure, he answered, "That's all I can afford right now."

2

Gamez testified that he did not own a home and would stay with his mother if he were released. He testified that the $500 would come from her, as his son had taken the money from Gamez's bank account and placed it in Gamez's mother's account at Gamez's request. Another $200 that had been in Gamez's bank account had been transferred to his "jail account" and exhausted. He further testified that his mother had no funds available, lived on "her retirement," and could "barely afford [things] right now."

The trial court informed defense counsel that it was "going to need some more testimony on this," and counsel responded that he was not going to offer additional testimony. The court then stated that it did not "have sufficient information as to finding what an appropriate bond would be in this case," was confused "as to what access [Gamez] has to what funds," and did not "think sufficient proof has been given as to what he can afford and what he can't afford." The court ruled that it would "grant a bond reduction, but [would not] grant it to the requested amounts because I don't know that I'm satisfied that that's what he can make." As noted above, the court set Gamez's bonds in the three cases at $4,500; $10,000; and $10,000, explaining that it was "just not satisfied that he can't make those bonds." The court advised the parties that the "same conditions" applied.

Following the hearing, the trial court signed a written order memorializing its ruling. Gamez filed written objections to the order, and the court signed a subsequent order reciting, "RELIEF DENIED, to which the Defendant objects."

At a pretrial hearing on June 3, 2025, the trial court reiterated that it had "some issues" with Gamez's "credibility on how much he could afford based on his testimony," which was the reason that it had reduced the bond amounts "but not to the amount[s] that [he] requested." Defense counsel argued that Gamez had been unable to afford the reduced amounts

3

as evidenced by his continued confinement. The court recognized that "that does . . . show that he can't make it, yeah."

## DISCUSSION

In two issues, Gamez contends that the trial court abused its discretion by (1) "refusing to release [him] on a personal bond, or alternatively set a bond he could afford" and (2) "ordering a bond condition [he] cannot afford, specifically a GPS monitor to be paid for by [him], when the record reflects he cannot afford it." The State concedes that the trial court erred by failing to release Gamez on a personal bond or set his bonds at a total amount he could afford. However, the State argues that Gamez's second issue is moot or, alternatively, was not preserved for appellate review. The State also argues that in the event we conclude that the issue is not moot and was preserved, it is without merit because "no evidence was offered regarding the cost of the GPS monitor, who would pay for the GPS monitor and, if ordered to be paid for by [Gamez], what amount he could contribute towards the cost."

## I. Standard of review

An applicant for pretrial habeas relief bears the burden of proving, by a preponderance of the evidence, the facts that would entitle him to relief. *Ex parte Thomas*, 906 S.W.2d 22, 24 (Tex. Crim. App. 1995). In reviewing a trial court's decision to grant or deny habeas relief, we view the facts in the light most favorable to the trial court's ruling and, absent an abuse of discretion, uphold the ruling. *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006). "An abuse of discretion does not occur unless the trial court acts 'arbitrarily or unreasonably' or 'without reference to any guiding rules and principles,'" *State v. Hill*, 499 S.W.3d 853, 865 (Tex. Crim. App. 2016) (quoting *Montgomery v. State*, 810 S.W.2d 372,

4

380 (Tex. Crim. App. 1990)), or unless the trial court's decision "falls outside the zone of reasonable disagreement," *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016).

In conducting our review, we afford almost total deference to the trial court's determination of historical facts that are supported by the record, especially when the fact findings are based on an evaluation of credibility and demeanor. *Ex parte Garcia*, 353 S.W.3d 785, 787 (Tex. Crim. App. 2011). We afford the same amount of deference to the trial judge's application of the law to the facts, if the resolution of the ultimate question turns on an evaluation of witness credibility and demeanor. *Ex parte Ali*, 368 S.W.3d 827, 831 (Tex. App.—Austin 2012, pet. ref'd). However, where the resolution of the ultimate question turns on an application of legal standards, we review the ruling de novo. *Ex parte Martin*, 6 S.W.3d 524, 526 (Tex. Crim. App. 1999).

## II.    Bond Amounts

Article 17.151 provides in relevant part:

> A defendant who is detained in jail pending trial of an accusation against him must be released either on personal bond or by reducing the amount of bail required, if the state is not ready for trial of the criminal action for which he is being detained within . . . 90 days from the commencement of his detention if he is accused of a felony.

Tex. Code Crim. Proc. art. 17.151, § 1(1).[1]

"Without an indictment, the State cannot be ready for trial under Article 17.151." *Ex parte Lanclos*, 624 S.W.3d 923, 927 (Tex. Crim. App. 2021). The article is mandatory, and the trial court has only two options: either release the accused on personal bond or reduce the

---

[1] Section 2 of the article contains exceptions to the mandatory-release provision that do not apply to this case. *See* Tex. Code Crim. Proc. art. 17.151, § 2.

5

required bail amount "to an amount that the record reflects the accused can make." *Id.* In exercising its discretion under the statute, the trial court "may not consider any factors outside of those in article 17.151, such as the factors enumerated in article 17.15, which explains how a trial court should generally exercise its discretion in setting bail." *Hernandez v. State*, 465 S.W.3d 324, 326 (Tex. App.—Austin 2015, pet. ref'd); *see Ex parte Gill*, 413 S.W.3d 425, 429 (Tex. Crim. App. 2013) (holding that court of appeals erred by concluding that trial judge properly considered factors not found in article 17.151).

The State concedes that it was not ready for trial within ninety days of Gamez's arrest and asserts that it "is obligated to conclude that the trial court abused its discretion in not granting a personal bond or setting a bond that [he] could afford." We agree.

In reducing Gamez's bonds to a total amount above what the record shows he could afford, the trial court reasoned that he had provided inadequate evidence of his finances and that it did not find his testimony credible "on how much he could afford." The court explained that it was "just not satisfied that he can't make" a total bond of $24,500.

However, it is "irrelevant" whether the record contains evidence of what bond a defendant can afford. *Ex parte Lanclos*, 624 S.W.3d at 928. "Article 17.151 does not condition a defendant's release on his proving how much bond he can afford. Rather, it mandates his release—either on personal bond or by reducing the required bail amount—period." *Id.*

Gamez testified that he could afford a total bond amount of only $500, and the State offered no evidence to contradict his testimony or otherwise show what amount he *could* afford. The trial court's obligation to release Gamez was not contingent on his providing further evidence of his financial resources, even if it disbelieved his testimony. *See id*. Under the statute's mandatory terms, if the court did not grant Gamez release on a personal bond, it was

6

required not merely to reduce his bonds but to reduce them to amounts *that the record showed he could meet*. *Id.* at 927; *see Ex parte Newson*, 656 S.W.3d 655, 660 (Tex. App.—Texarkana 2022, no pet.) (concluding that "the trial court failed to act within its discretion by simply picking a number that was lower than the original bail amount"). To do anything else was an abuse of discretion. And, as the trial court recognized during the June 2025 hearing, Gamez has been unable to afford the reduced bonds and has remained in jail since the court's order. We therefore hold that the trial court abused its discretion by failing to set his bonds at amounts that the record reflects he can make in order to effectuate release. *See Ex parte Wheeler*, 203 S.W.3d at 324; *Rowe v. State*, 853 S.W.2d 581, 582 n.1 (Tex. Crim. App. 1993). We sustain Gamez's first issue.

## III.    GPS Monitor

In his second issue, Gamez contends that because he cannot afford his current bond amounts, "he likewise cannot afford to pay a GPS monitoring fee required to be released from jail. Consequently, this bond condition effectively imposes an additional bond that Appellant cannot afford, which violates Article 17.151." The State responds that the issue is moot if we sustain Gamez's first issue or, alternatively, that Gamez failed to preserve the issue because he made "a non-particularized objection" during the bond hearing and only specifically challenged the imposition of the GPS-monitoring condition in untimely written objections filed after the trial court's ruling. The State argues that in the event we address the issue's merits, we should overrule it because Gamez offered no evidence "regarding the cost of the GPS monitor, who would pay for the GPS monitor and, if ordered to be paid for by [him], what amount he could contribute towards the cost."

### A.    Mootness

"A case becomes moot on appeal when the judgment of the appellate court can no longer have an effect on an existing controversy or cannot affect the rights of the parties." *Jack v. State*, 149 S.W.3d 119, 123 n.10 (Tex. Crim. App. 2004). The mootness doctrine limits courts to deciding cases where an actual controversy exists between the parties. *See Ex parte Flores*, 130 S.W.3d 100, 104–05 (Tex. App.—El Paso 2003, pet. ref'd). "It is axiomatic that a cause becomes moot when the appellate court's judgment cannot have any practical legal effect upon a controversy." *State v. Garza*, 774 S.W.2d 724, 727 (Tex. App.—Corpus Christi–Edinburg 1989, pet. ref'd). "[W]here the premise of a habeas corpus application is destroyed by subsequent developments, the legal issues raised thereunder are rendered moot." *Bennet v. State*, 818 S.W.2d 199, 200 (Tex. App.—Houston [14th Dist.] 1991, no pet.) (quoting *Saucedo v. State*, 795 S.W.2d 8, 9 (Tex. App.—Houston [14th Dist.] 1990, no pet.)).

The fact that we sustained Gamez's first issue does not render his second issue moot. We determined only that the trial court abused its discretion by setting Gamez's bonds at amounts higher than the record showed he could afford. Whether the bond condition requiring him to wear a GPS monitor poses a distinct obstacle to his mandatory release under article 17.151 remains a live controversy potentially preventing him from obtaining his desired relief. *See In re Lara Belmontes*, 675 S.W.3d 113, 115 (Tex. App.—San Antonio 2023, orig. proceeding) (per curiam) (holding that mandamus proceeding was not moot because "relator did not receive the relief he sought from the trial court, and there remains a live controversy"). Accordingly, because our disposition of Gamez's second issue may still impact the effectuation of his release under the statute, we conclude that the issue is not moot. *See Garza*, 774 S.W.2d at 727.

8

**B.      Preservation**

Preservation of error is a systemic requirement on appeal. *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009) (citing *Haley v. State*, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005)). If an issue has not been preserved for appeal, we should not address the merits of that issue. *Id.* To preserve a complaint for appellate review, there must ordinarily be a timely, specific objection and a ruling by the trial court. Tex. R. App. P. 33.1(a). "To be timely, a complaint must be made as soon as the grounds for complaint are apparent or should be apparent." *State v. Lerma*, 639 S.W.3d 63, 66 (Tex. Crim. App. 2021). To be sufficiently specific, an objection need not employ "hypertechnical or formalistic . . . words or phrases," *Golliday v. State*, 560 S.W.3d 664, 670 (Tex. Crim. App. 2018); "magic words," *Ford*, 305 S.W.3d at 533; or a citation to a particular statute, *Laws v. State*, 640 S.W.3d 227, 229 (Tex. Crim. App. 2022) (quoting *Ford*, 305 S.W.3d at 533). Rather, the objecting party must "let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it." *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009); *see Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992) (same). "This gives the trial judge and the opposing party an opportunity to correct the error." *Pena*, 285 S.W.3d at 464 (citing *Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005)). It is a staple in habeas corpus jurisprudence that preservation of error is generally a prerequisite to being granted relief. *Garza v. State*, 435 S.W.3d 258, 261–62 (Tex. Crim. App. 2014).

Gamez challenged the GPS-monitoring condition in his habeas applications— which were filed around three months after the condition was originally ordered—arguing that it

"effectively imposed a bond that Appellant cannot afford, which violates Article 17.151." The following exchange occurred at the time of the trial court's ruling during the bond hearing:

> THE COURT: Yes. So the motion is granted with those modifications.
>
> DEFENSE COUNSEL: And we—we object.
>
> THE COURT: Understood.
>
> DEFENSE COUNSEL: Okay.
>
> THE COURT: Understood. And you can add this to the list of cases to be taken up.

On the same day that the trial court signed its written order reducing the bond amounts but maintaining the previously imposed conditions, Gamez filed "WRITTEN OBJECTIONS TO BOND CONDITIONS IMPOSED," in which he argued that the trial court lacked authority to order GPS monitoring.

We conclude from this record that Gamez's second issue was preserved for appellate review. The issue was raised in a timely manner—both in his habeas applications and immediately after the hearing, in which his bond amounts were reduced and the GPS-monitoring condition reimposed. *See Ex parte Buks*, 654 S.W.3d 516, 522–23 (Tex. App.—Houston [14th Dist.] 2022, no pet.) (rejecting argument that defendant "waived his objections to bond conditions because he failed to object to them when they were imposed" and concluding that objections were timely because "he filed his application for writ of habeas corpus within one month of imposition of the bond conditions"). And the record affirmatively demonstrates that the trial court understood the nature of defense counsel's objection during the hearing, which was also inferable from the context in which it was made. *See Gonzalez v. State*, 616 S.W.3d 585, 591 (Tex. Crim. App. 2020) ("An objection . . . is sufficiently specific if the trial court is

aware of the complaint or if the grounds are apparent from the context."); *Ferguson v. State*, 2 S.W.3d 718, 720 (Tex. App.—Austin 1999, no pet.) ("The record shows affirmatively that the trial court understood the objection. Therefore, appellant preserved for appellate review the matter presented in point of error three."); *cf. Bennett v. State*, 235 S.W.3d 241, 243 (Tex. Crim. App. 2007) ("This would be a different case if the record indicated that the trial judge actually understood appellant's request to encompass the matters about which appellant now complains.").

### C.    Cost of GPS Monitor

The trial court's order of commitment in trial court cause number D-1-DC-24-303454 notes only: "GPS in-jail supervision."[2] During the bond hearing, the State—at the trial court's request—recited Gamez's bond conditions:

> the first bond, the cause number ending in -454, there's a $25,000 bond with no contact, GPS in-jail install, supervision, 200-yard stay-away. For the cause number ending in -455, the current bond is set at $50,000 with a stay-away, no contact, supervision, GPS; and as well as the cause number in -456, there's no additional conditions. That's probably because it's connected to -455.

In its order reducing Gamez's bond amounts, the trial court ordered that the conditions for each bond "remain[ed] the same." As the State recognizes, the record is silent regarding the cost of the GPS monitor, who bore responsibility for paying the cost, and when it was to be paid.

A trial court may require as a condition of release on bond that a defendant submit to electronic monitoring, with the cost for the monitoring to be assessed as reimbursement fees or

---

[2] The conditions on the order of commitment in cause number D-1-DC-24-303456 were crossed out, and the record does not include an order of commitment for cause number D-1-DC-24-303455.

paid directly by the defendant. Tex. Code Crim. Proc. arts. 17.43; .44(a)(1), (e). However, as noted above, article 17.151's terms are mandatory. *Ex parte Lanclos*, 624 S.W.3d at 927. Addressing an analogous situation in which a trial court that was obligated to release a defendant under article 17.151 considered the general rules for setting a bond amount listed in article 17.15, the Court of Criminal Appeals directed that the trial court should not have considered "factors outside of article 17.151." *Ex parte Gill*, 413 S.W.3d at 426. To make release under article 17.151 contingent on rules or conditions that "may prevent a defendant's release"—including "matters such as victim- or community-safety concerns"—"reads the phrase 'must be released' right out of article 17.151," "deprives the statute of any meaning," and "potentially frustrates article 17.151's clear intent." *Id.*; *see Hernandez*, 465 S.W.3d at 326; *see also Ex parte Hodge*, No. 12-21-00205-CR, 2022 WL 868716, at *2 (Tex. App.—Tyler Mar. 23, 2022, no pet.) (mem. op., not designated for publication) ("[B]ecause [defendant] cannot pay the GPS monitoring fee to be released from jail, the bond condition effectively imposed a bond that [he] cannot afford, which violates Article 17.151."). Thus, to the extent that a bond condition prevents a defendant's release on a bond amount that he can meet, it is unlawful.

Nevertheless, owing to the present record's silence, we cannot say that the trial court has violated article 17.151 by imposing a bond condition that Gamez is unable to afford. "Appellant, as the appealing party, has an obligation to present a record in this Court that demonstrates that he is entitled to relief." *Davila v. State*, 623 S.W.3d 1, 11 (Tex. App.—Austin 2020, pet. ref'd); *see Davis v. State*, 345 S.W.3d 71, 77 (Tex. Crim. App. 2011) (stating that appealing party must "make a record demonstrating that error occurred in the trial court"); *London v. State*, 490 S.W.3d 503, 508 (Tex. Crim. App. 2016) (observing that "the appealing

12

party carries the burden to ensure that the record on appeal is sufficient to resolve the issues presented"). Gamez has failed to do so in this case. Consequently, we overrule his second issue.

## CONCLUSION

Having sustained Gamez's first issue and overruled his second, we reverse the trial court's orders denying his pretrial habeas applications and remand the causes to the trial court to set his bonds—including all costs associated with conditions of release imposed by the trial court—at a total amount that the record shows he can afford to pay. *See Ex parte Lanclos*, 624 S.W.3d at 929.

_____

Maggie Ellis, Justice

Before Chief Justice Byrne, Justices Kelly and Ellis

Reversed and Remanded

Filed:   August 20, 2025

Do Not Publish

13